OPINION OF THE COURT
Eli Wager, J.
This is an action for an accounting of assets and income of a law partnership. The complaint also alleges conversion and *496 seeks specific performance of an agreement allegedly entered into by the parties. While the issues presented would not appear to be unique, there are no reported cases precisely on point, hence this appears to be a case of first impression.
The partnership, Cohn & Greenberg, Esqs., was formed on August 21, 1985 with defendant Cohn having a two-thirds share and plaintiff Greenberg having a one-third share. The partnership continued for several apparently successful years before it was dissolved as a matter of law, on December 9, 1988. On that date, plaintiff Neil H. Greenberg (plaintiff) was temporarily suspended from the practice of law pending disposition of a disciplinary proceeding. Plaintiff’s suspension was ultimately finalized for a period of three years, effective September 25, 1989, by order of the Appellate Division, Second Department.
This court has already determined that a valid partnership existed which terminated on December 9, 1988 and further that plaintiff is entitled to an accounting from defendant (Wager, J., May 6, 1991). Defendant Steven Cohn (defendant) was directed by this order to prepare a list of the open and closed files that were in existence on December 9, 1988 and set forth the amount due plaintiff, by defendant’s calculation. Defendant has provided a list of some 136 negligence cases. No accounting was provided for commercial and noncontingency fee matters.
Defendant’s calculation is based on his argument that plaintiff is only entitled to compensation on a quantum meruit basis for services actually performed by plaintiff and disbursements incurred by him prior to the date of his suspension. According to defendant, this allows plaintiff to be compensated on only an hourly basis. Applying this method of compensation, defendant claims that plaintiff actually owes him money. Plaintiff disputes not only the number of cases accounted for, but also defendant’s method of calculation. Counsel were directed to submit memoranda of law limited to the issue of what method of compensation must be applied. Cases cited to the court do not address the issues confronting this court. Research reveals no cases precisely in point. The court in weighing the issues in this case has, therefore, relied upon the Code of Professional Responsibility, the Rules of the Appellate Division, Second Department, ethics opinions of the Bar Associations of New York State and Nassau County, and various related reported cases.
Lawyers and law firms are prohibited from sharing legal *497 fees with nonlawyers (Code of Professional Responsibility DR 3-102). Compensation of disbarred, suspended and resigned attorneys-at-law is more specifically regulated by the Rules of the Second Department. "A disbarred, suspended or resigned attorney may not share in any fee for legal services performed by another attorney during the period of his removal from the bar. A disbarred, suspended or resigned attorney may be compensated on a quantum meruit basis for legal services rendered and disbursements incurred by him prior to the effective date of the disbarment or suspension order or of his resignation. The amount and manner of payment of such compensation and recoverable disbursements shall be fixed by the court on the application of either the disbarred, suspended or resigned attorney or the new attorney, on notice to the other as well as on notice to the client. Such applications shall be made at special term in the court wherein the action is pending or at special term in the Supreme Court in the county wherein the moving attorney maintains his office if an action has not been commenced. In no event shall the combined legal fees exceed the amount the client would have been required to pay had no substitution of attorneys been required” (22 NYCRR 691.10 [b]).
The Rules of the Second Department clearly prohibit plaintiff from sharing legal fees for services performed by defendant after plaintiff was suspended. However, it is equally clear that plaintiff is not seeking such relief. Rather, he is seeking fees for legal services performed by the partnership prior to his suspension. To read 22 NYCRR 691.10 (b) so as to prohibit collection of fees after an attorney is suspended which fees were earned prior to suspension, would result in a retroactive and confiscatory rule, which this court agrees was not contemplated by the Second Department.
According to an opinion by the New York State Bar Association Committee on Professional Ethics—
"As a matter of ethics, as long as the disbarment was unrelated to the matter in which the fees were earned, an attorney may properly share in fees for work performed or responsibility assumed until the time of disbarment, but not for services performed or responsibility assumed after the time of disbarment. * * *
"Similarly, in accordance with the applicable court rules, a disbarred lawyer may be compensated to the point of disbarment on the basis of quantum meruit. * * *
*498 "The amount of such compensation is to be fixed by the court, which must decide what proportion of the contingency fee was earned prior to the disbarment of the lawyer” (NY St Bar Assn Ethics Opn No. 609 [1990] [citations omitted]).
To the extent that cases were settled, or otherwise concluded, but for which the earned fee had not yet been received as of December 9, 1988, plaintiff is clearly entitled to his share of said fees. This is true whether the matter was a negligence case or whether it was a commercial or other noncontingency fee matter.
With respect to those matters where work had been performed, but not completed, the question is a bit more involved. There are apparently two kinds of cases that fall in this category — (1) those cases retained pursuant to an ordinary noncontingent fee retainer agreement and (2) those cases retained on a contingency basis.
Noncontingent Fee Matters
With respect to those cases retained pursuant to an ordinary noncontingent fee retainer agreement, plaintiff is entitled to share in the legal fees earned by the partnership prior to his suspension on a quantum meruit basis (see, Nassau County Bar Assn Ethics Opn No. 83-5). Quantum meruit is defined "[a]s much as he deserved” (Black’s Law Dictionary 1408 [4th ed 1968]). Does plaintiff then deserve an hourly wage for work he actually performed on a file, or as a former partner, does he deserve something more? The court finds that he deserves something more.
Matter of Cordes v Purcell, Fritz & Ingrao (89 AD2d 870 [2d Dept 1982]), while concerned with an outgoing attorney and not a suspended attorney, is nonetheless instructive on this point. Specifically, it held that one option of an outgoing attorney is to take "on the basis of quantum meruit * * * a contingent percentage to be determined at the conclusion of the case.” It is thus clear to this court that quantum meruit is not necessarily defined by "hourly wage”.
As a one-third partner in Cohn & Greenberg, Esqs. until December 9, 1988, plaintiff deserves his one-third share of the profits resulting from fees earned up until December 9, 1988. Defendant has declined to provide an account of such cases, claiming that it is his belief there were more moneys prepaid than accounts receivable in December 1988. However, absent a proper and complete accounting this cannot be confirmed.
*499 Accordingly, it must be determined (1) what portion of the "prepaid” commercial fees were actually earned by the firm prior to December 9, 1988, and (2) what accounts receivable existed on commercial cases on December 9, 1988 in order to determine the amount of fees, if any, in which plaintiff is entitled to share. As the fees were earned prior to plaintiff’s suspension, this determination accords with the rule in 22 NYCRR 691.10 (b). As a one-third partner as of December 9, 1988, plaintiff was entitled to such earned fees as of that date.
New York State Bar Association Ethics Opinion No. 334 (1974) cited by defendant, does not indicate a different result. As defendant correctly quotes, this opinion states: "[I]t would be impermissible, for the reasons assigned above, for the partnership to share with the suspended attorney any of the firm’s income that is attributable to services rendered during the period of his suspension”.
The court is aware that fees attributable to services rendered after the suspension are unavailable to the plaintiff. However, as stated above, plaintiff is seeking fees for services rendered prior to his suspension. No statute or rule cited in this opinion can be read to prohibit this relief.
Contingent Fee Matters
With respect to contingency fee matters, defendant has provided the court with a list of negligence cases that were allegedly in existence as of the date of plaintiff’s suspension. This list contains 136 cases, notwithstanding defendant’s prior representation that Cohn & Greenberg, Esqs. had approximately 450 contingency cases as of the date of plaintiff’s suspension. This is a matter yet to be resolved. Defendant must either account for the remaining 300 plus cases or explain the discrepancy. Notwithstanding this difference, the court is able to determine the appropriate method of compensation.
The question of ascertaining an appropriate sum to be paid to a suspended attorney on a contingency fee case where the contingency fee has not been established has been specifically addressed by an opinion of the Committee on Professional Ethics of the Bar Association of Nassau County (Opn No. 83-5). Where such a situation exists, the Committee found two alternatives appropriate: (1) The amount can be fixed by the court; or (2) where the attorneys can agree, an appropriate percentage figure can be applied to contingency fee cases on *500 hand as of the date of suspension, thereby establishing the sum due the suspended or disbarred attorney.
There is some indication that such an agreement was in fact reached by the parties with respect to contingency cases. However, to the extent that such an agreement did exist, it has since been repudiated by defendant. In any event, the court is entitled to fix the fee (22 NYCRR 691.10 [b]). Accordingly, each contingency case must be examined and its status at the time of plaintiff’s suspension (Dec. 9, 1988) determined. For those cases settled or otherwise concluded, but for which no fee had yet been collected, plaintiff is entitled to his one-third share of 100% of the fee. For those cases which were in various stages of litigation, preliminary or actual, an examination of each file must be made and a determination reached as to the value of the partnership interest earned in each file as of December 9, 1988, expressed as a percentage of the total fee to be earned in that case. The plaintiff’s one-third share can then be calculated easily.
Finally, the court notes that the opinion of the Committee on Professional Ethics of Nassau County Bar Association, solicited by defendant on this matter, while unclear in its analysis, does make the determination that a "suspended attorney may be paid a share of law partnership fees but only to the extent that they were earned prior to the date of his suspension from practice” (Opn No. 89-48).
In reaching my determination, the court is not seeking to reward plaintiff. Rather, based on my analysis of the rules and the applicable opinions, the court prescribes a method for determining the compensation due plaintiff based on quantum meruit. In so holding, the court specifically rejects defendant’s contention that plaintiff is entitled only to an hourly wage for work actually completed by him. Such a finding would disregard the partnership status of plaintiff on the date of his suspension and require forfeiture of fees already earned by him as a partner prior to his suspension. The court does not read the Appellate Division Rules to be so draconian, nor does it interpret and apply the rules so as to bestow a windfall on the defendant as a consequence of the plaintiff’s suspension.
This is supported by a decision of the Honorable Samuel Rabin in Flecha v Goodman (31 Misc 2d 444 [Sup Ct, Queens County 1961]) which did not concern a partnership dispute but which did hold that an attorney who rendered services in a contingency case, but who was suspended prior to the conclu *501 sion of the case (for reasons not related to the case), was entitled to a charging lien. The court quoted the late Chief Justice Vanderbilt of New Jersey in Stein v Shaw (6 NJ 525, 527, 79 A2d 310, 311):
" 'There is no sound reason in law or morals for permitting the defendant to use the plaintiffs disbarment as an escape from paying him for services rendered or necessary disbursements made by him in her behalf. * * *
" 'If the rule were otherwise, the effect of disciplinary action would inevitably be retroactive, which is not the intent or purpose in imposing discipline. The court, moreover, would never know the extent of such retroactive punishment without an undesirable inquiry as to the extent of the attorney’s pending business and the monetary value thereof.’ ” (31 Misc 2d, at 446.)
It is of some note that the Second Department will allow a fee-splitting agreement to be enforced where an attorney’s disbarment was not related to the case and, of course, where the attorney rendered " ' "some work, labor or service toward the earning of the fee” ’ ” prior to his disbarment (Matter of Marett v Pegalis & Wachsman, 176 AD2d 321, 322-323 [2d Dept 1991]).
The court is aware of Mitchell v B.A.S.F. (145 Misc 2d 930 [Sup Ct, Saratoga County 1989]) wherein the court declined to award a suspended attorney an equitable portion of a contingent fee. "Despite his contingent fee arrangement with his client, pursuant to the [Appellate Division] rule, payment by his former client for his services prior to suspension is available only on a quantum meruit basis. (Potts v Hines, 144 AD2d 189.) He is not entitled to share in the ultimate recovery on an 'equitable’ basis.” (145 Misc 2d, at 932.)
The court notes that Mitchell (supra) did not involve a dispute between former partners but rather involved a successor attorney. In addition, the case cited in Mitchell does not specifically refer to contingency cases, but merely recites the rule that "[a] suspended attorney is entitled to recover on a quantum meruit basis for services performed prior to suspension” (Potts v Hines, 144 AD2d 189, 190 [3d Dept 1988]).
However, to the extent that Mitchell (supra) would indicate a different result than that reached herein, this court declines to follow it.
Parenthetically, the court notes that even if the hourly wage approach were appropriate, defendant’s attempt to limit *502 said wage to $50 an hour is patently without merit. On the one hand defendant argues that plaintiffs partnership status is of no import and, therefore, plaintiff should be relegated to collecting an hourly wage, but on the other hand, he seeks to limit the hourly wage based on plaintiffs partnership status.
In sum, the plaintiff is entitled to be compensated on a quantum meruit basis as more specifically detailed above. Plaintiff is also entitled to one third of all reimbursed expenses that had been advanced prior to December 9, 1988, provided he has an interest in such reimbursed expenses.
Defendant is directed to prepare, serve and file within 30 days from the date of service of this decision and order, a sworn account which shall include
(1) All accounts receivable for commercial and other noncontingency matters as of December 9, 1988; and
(2) All contingency cases existing as of the date of the suspension. This shall include settled and concluded cases where the fee had not yet been received. The list shall set forth the status of the case at the time of the suspension; and
(3) All reimbursed expenses advanced prior to December 9, 1988. The extent of plaintiffs interest, if any, in reimbursed expenses shall be determined by the Referee.
Finally, the court acknowledges its unavailability to devote the extensive time required to perform this tedious accounting process. The plaintiff is, therefore, directed to submit an order of reference within 10 days from the date hereof providing for the appointment of a Referee to hear and report to the court on the issues raised in this account, to evaluate the files at issue on a case-by-case basis as hereinabove directed and to report on the amounts due to the plaintiff, if any (CPLR 4201, 4301, 4311, 4312, 4317 [b]). From the books of account of the partnership, the Referee shall also report on the ratio of overhead and operating expenses (excluding partners’ salaries) to gross fee income, so that an equitable portion of such expense may be applied to the plaintiffs share of gross fees, if any, due to him. The proposed order shall also leave blank the space for fixing a fee for the compensation of the Referee and other costs of the reference. The parties and their counsel will be given an opportunity by the court to stipulate to the *503 Referee’s compensation. Absent agreement, the court will fix a fee in the order of reference (CPLR 4321). The court will assess the costs of the reference against either or both of the parties at the conclusion of the reference and in the final order determining this case.