Coos
No. 99-094

ALVA MCKENZIE & a.

v.

CITY OF BERLIN & a.

December 5, 2000

*Craig, Wenners & Craig, P.A.*, of Manchester (*Vincent A. Wenners, Jr.* and *Stephanie Stergiou Ferro* on the brief, and *Mr. Wenners* orally), for the plaintiffs.

*Donahue, Tucker & Ciandella*, of Exeter (*John J. Ratigan* and *Susan W. Chamberlin* on the brief, and *Mr. Ratigan* orally), for defendant City of Berlin.

*Philip T. McLaughlin*, attorney general (*Suzan M. Lehmann*, assistant attorney general), for defendant New Hampshire Retirement System, filed no brief.

DALIANIS, J. The plaintiffs, twenty-nine employees of defendant City of Berlin (City), challenge part of the injunctive relief granted by the Superior Court (*Nadeau, J.*). The City cross-appealed the court's grant of declaratory judgment and injunctive relief but at oral argument indicated that it had already implemented the court-ordered relief, making this portion of its cross-appeal moot. We affirm in part and reverse in part.

The parties dispute the plaintiffs' entitlement to State retirement benefits. The plaintiffs, members of Local 1444 of the American Federation of State, County, and Municipal Employees, AFL-CIO, participate in a city retirement plan. They seek instead to participate in the State retirement plan, the New Hampshire Retirement System (NHRS). The City has participated in the State retirement plan since 1946, but it also has had its own retirement plan since 1962. The central issue is whether the City was entitled to enroll the plaintiffs in its own plan rather than the State plan.

This case has a long and complex history. We derive the following facts from the record. The State retirement plan was established in 1945. *See* Laws 1945, ch. 183. At the time, municipalities could elect to participate in the State system. *See* Laws 1945, 201:2. Once a municipality so elected, it was required to enroll all of its subsequently hired employees in the State system. *See id.* at :2, :4, II. At that time, the decision to become a participating employer was irrevocable. *See id.* at :6, IV. The City elected to participate in the State plan in 1946.

In 1955, the legislature amended the retirement system to permit municipalities to revoke their election to participate in it with respect to individuals who, as of July 1, 1956, were inactive members of the State plan, or who became municipal employees thereafter. *See* Laws 1955, 301:17. In 1956, the City passed a resolution

purporting to do this. Nonetheless, despite the 1956 resolution, the City continued to enroll employees in the State plan.

In 1961, the legislature enacted the first of three special acts related to the City's administration of a local retirement plan. The 1961 act "empowered [the City] to create a retirement system for the employees [of the department of public works], who [were] not under any other system of retirement, except social security." Laws 1961, 350:1.

The City created its own retirement plan for public works department employees in 1962.

In 1963, the legislature amended the 1961 act to permit the City to create a retirement system for all of its employees. *See* Laws 1963, 445:1. At oral argument, the City's attorney conceded that neither the 1961 nor the 1963 act, alone, altered the City's obligation to enroll its employees in the State retirement plan.

In 1986, the NHRS discovered the 1956 resolution and brought it to the City's attention. In response, the City and the attorney general's office crafted a resolution to nullify the 1956 resolution, which the City passed in 1988. In it, the City acknowledged that "participation in the state's retirement fund at th[e] time of [the 1956 resolution] was not and is not considered optional" and that since the 1956 resolution, the City has continued to participate in the State plan.

Despite the 1988 resolution, the City still enrolled some employees in the State plan and others in the city plan. The employees in the city plan all were, at one time, members of Local 1444, the plaintiffs' union.

When the NHRS became aware of this practice in 1989, it notified the City of its need to enroll *all* employees in the State plan. The City then sought and obtained legislation to exempt certain of its union employees from the State retirement plan. In 1990, the legislature amended the 1961 special legislative act and permitted the City to create a retirement system "for the collective bargaining unit employees of the departments of public works, water works, and recreation and parks." Laws 1990, 223:4. Despite the 1990 act, the City and the NHRS continued to discuss ways to bring these employees into the State plan.

In 1997, the plaintiffs filed a petition in which they asked the court to declare them entitled to enroll in the State retirement plan and in which they sought injunctive relief, including attorney's fees. After an evidentiary hearing, the trial court held that the City's 1956 attempted revocation of its 1946 election into the State retirement system was *ultra vires* and thus void. The court

concluded that the City has been required, since 1946, to enroll all of its employees in the State plan. The court rejected the City's argument that the 1961, 1963, and 1990 acts permitted it to enroll the plaintiffs in its own retirement plan.

The court ordered the City to enroll the plaintiffs in the State retirement system from the date of the order. It gave the plaintiffs the option of having the City transfer the funds from the city plan to the State plan or to have the City pay each of them the balance of the funds in their city retirement accounts. The court denied the plaintiffs' request for attorney's fees.

Both parties moved for clarification of the court's order. In response, the court modified the relief granted. The court ordered the City to terminate its plan and distribute the plan's assets according to the plan documents. It further ordered the City, on behalf of each plaintiff, to calculate the difference between the contributions it actually made under its own plan and those it would have made under the State plan. If the City would have contributed more under the State plan, the court ordered the City to issue a lump sum payment to each plaintiff in the amount of the difference. If the contribution under the local plan was greater than the contribution would have been under the State plan, the court permitted each plaintiff to retain the difference. The court declined to allow the plaintiffs to "buy back" years of service under the State plan, pursuant to RSA 100-A:3, VI(d) (Supp. 1999).

We address the City's cross-appeal first. The City argues that the 1961, 1963, and 1990 acts permitted it to enroll the plaintiffs in its own plan. We disagree.

> This court is the final arbiter of the intent of the legislature as expressed in the words of a statute. When construing its meaning[,] we first examine the language found in the statute, and where possible, we ascribe the plain and ordinary meanings to words used. Furthermore, when examining statutory language, we construe all parts of a statute together to effectuate its overall purpose and to avoid an absurd or unjust result.

*Appeal of Estate of Van Lunen*, 145 N.H. 82, 86, 750 A.2d 737, 740 (2000) (quotation, brackets, and citation omitted).

None of the special legislative acts permitted the City both to participate in a State plan and simultaneously to enroll some employees in a city plan. Since 1946, the City has been obligated to enroll *all* of its employees in the State plan. It never effectively revoked its participation in the State plan, and thus has never been

authorized to enroll *any* of its employees in a city plan, much less to enroll only Local 1444 members in such a plan. It has never been permitted, by statute, to have a dual system.

The 1956 resolution, purporting to revoke the City's participation in the State plan, was legally ineffective, because the City continued thereafter to enroll some employees in the State plan. Neither it, nor the 1961 and 1963 acts, had any effect upon the City's obligation to enroll all of its employees in the State plan.

Moreover, although the City may have interpreted the 1990 act to exempt certain of its union employees from the State plan, by its express terms, it exempted no one. We agree with the City that the 1990 act is unambiguous and thus do not review its legislative history. "While legislative history may be helpful in the interpretation of an ambiguous statute, it will not be consulted when the statutory language is plain." *Appeal of Cote*, 144 N.H. 126, 129, 737 A.2d 1114, 1117 (1999) (quotation omitted).

The City argues that the 1990 act, in particular, "should be viewed as a remedial, curative act" that "prospectively authorize[d the City] to operate [a local plan and] also . . . retrospectively sanction[ed] the past operation of this plan." We disagree.

Under the City's interpretation, the 1990 act would undermine the plaintiffs' vested rights to State retirement benefits. *See State Employees' Ass'n of N.H. v. Belknap County*, 122 N.H. 614, 621, 448 A.2d 969, 972 (1982). No legislative act could validly do so. *See* 2 N. SINGER, SUTHERLAND STATUTORY CONSTRUCTION § 41.15, at 426 (5th ed. 1993) ("A curative act . . . which attempts the impossible as where it impairs the obligation of contracts or interferes with vested rights will be declared unconstitutional."); *cf. Opinion of the Justices (Current Use Reimbursement Program)*, 137 N.H. 270, 278, 627 A.2d 92, 97 (1993). The City's argument that the 1990 act somehow modified RSA chapter 100-A because it is more specific legislation lacks merit and warrants no further discussion. *See Vogel v. Vogel*, 137 N.H. 321, 322, 627 A.2d 595, 596 (1993).

■ Accordingly, we affirm the trial court's interpretation of the 1961, 1963, and 1990 laws and concur with its conclusion that these laws did not authorize the City to enroll the plaintiffs in its own plan.

■ The City next asserts that its failure to enroll the plaintiffs in the State plan was a result of its statutory obligation to bargain with the plaintiffs' union regarding pension benefits. The City did not raise this argument below, however, and thus has not preserved it

for our review on appeal. *See In Re Estate of Cass*, 143 N.H. 57, 63, 719 A.2d 595, 600 (1998).

We now address the plaintiffs' appeal. The plaintiffs first argue that the court erred when it did not permit them to "buy back" prior years of service through RSA 100-A:3, VI(d). We agree and reverse this portion of the court's order.

RSA 100-A:3, VI(d) provides a mechanism through which an employee may receive credit for prior service when the employer has failed to enroll him or her in the State plan. Such prior service credit must be purchased, and the employer and the employee must each pay one-half of the cost. *See* RSA 100-A:3, VI(d)(1). RSA 100-A:3, VI(d)(1) provides:

> In the case of·an employer which through its own fault, and not the fault of the employee, failed to enroll an eligible employee at the time such employee became eligible for membership in this retirement system or a predecessor system, . . . the employer shall pay ½ of the [cost of the prior service credit] and the employee shall pay ½.

If the employee is financially unable to pay his or her portion, then the employer pays its portion directly to the employee, and the employee receives no prior service credit. *See* RSA 100-A:3, VI(d)(3).

We disagree with the City's contention that RSA 100-A:3, VI(d) does not apply because the City did not "simply neglect[] to enroll employees in NHRS," but rather paid substantial sums to provide them with city plan benefits. The record shows that the City failed to enroll some of its employees in the State retirement system, despite its statutory obligation to do so. That the City illegally maintained its own plan is immaterial. *Cf. State Employees' Ass'n of N.H.*, 122 N.H. at 622, 448 A.2d at 973.

The City asserts that applying RSA 100-A:3, VI(d) would be unfair, requiring it both to pay for the city plan and one-half of the cost of the plaintiffs' prior service credits. We hold that the balance of·the equities favors the plaintiffs.

■ RSA 100-A:3, VI(d) is the only provision through which the plaintiffs may "buy back" years of service. Without it, the plaintiffs would be deprived of the benefits to which they would have been entitled had the City enrolled them in the State plan upon date of hire as statutorily required. *See id.* at 626, 448 A.2d at 975. Moreover, while the record shows that the City paid more under its own plan than it would have paid under the State plan, the record

also shows that the city plan's benefits are now inferior to those under the State plan. Further, we note that the plaintiffs also contributed to the city plan and that they too will have to pay for any prior service credit purchased under RSA 100-A:3, VI(d). We therefore hold that RSA 100-A:3, VI(d) applies and that, consistent with its terms, the plaintiffs may "buy back" prior service credits.

The plaintiffs' second argument on appeal is that they are entitled to attorney's fees because they: (1) were required to seek judicial assistance to secure a clearly defined and established right; and (2) conferred a substantial benefit upon "the community at large." We affirm the trial court's denial of attorney's fees.

"In reviewing a superior court award of attorney's fees, we apply an abuse of discretion standard, giving tremendous deference to the court's decision . . . . If there is some support in the record for the trial court's determination, we will uphold it." *Glick v. Naess*, 143 N.H. 172, 175, 722 A.2d 453, 455 (1998) (citations, brackets, and quotation omitted).

We find no abuse of discretion in the court's denial of attorney's fees. The City's actions were based upon its "reasonable, albeit mistaken, interpretation" of the 1961, 1963, and 1990 laws and the 1956 resolution. *Dumont v. Town of Wolfeboro*, 137 N.H. 1, 11, 622 A.2d 1238, 1244 (1993). We have had no prior occasion to interpret these laws. Accordingly, the trial court could properly determine that the significance of these laws on the City's obligation to enroll its employees in the State retirement plan "was a fair and reasonable ground for litigation." *Casico v. City of Manchester*, 142 N.H. 312, 318, 702 A.2d 302, 306 (1997).

█ Moreover, the benefit that the plaintiffs secured in this litigation inured neither to the City's taxpayers as a whole, nor to the general public, and therefore does not warrant the award of attorney's fees. *See generally Claremont School Dist. v. Governor (costs and attorney's fees)*, 144 N.H. 590, 761 A.2d 389 (1999). At best, it benefitted only a subgroup of the City's employees: those members of Local 1444 who wished to participate in the State plan. In support of their argument that they secured a substantial benefit upon the community at large, the plaintiffs invite us to view their lawsuit as a "qui tam" action brought on behalf of the State. We decline to do so.

*Affirmed in part; reversed in part.*

BRODERICK, J., concurred; HORTON, J., retired, specially assigned under RSA 490:3, and GROFF, J., superior court justice, specially assigned under RSA 490:3, concurred.