Original
No. 2003-370

## Petition of Goffstown Education Support Staff, NEA-New Hampshire

Argued: February 11, 2004
Opinion Issued: April 21, 2004

*James F. Allmendinger*, of Concord, staff attorney, NEA-New Hampshire, by brief and orally, for the petitioner.

*Sulloway & Hollis, P.L.L.C.*, of Concord (*William D. Pandolph* and *Timothy A. Gudas* on the brief, and *Mr. Pandolph* orally), for the respondent.

*Sheehan Phinney Bass + Green, P.A.*, of Manchester (*Robert R. Lucic* on the brief and orally), for the New Hampshire Retirement System, as *amicus curiae*.

BRODERICK, C.J. In this petition for a writ of certiorari, the petitioner, the Goffstown Education Support Staff, NEA-New Hampshire (union), seeks review of the determination by the Board of Trustees (board) of the New Hampshire Retirement System (NHRS) that the support staff employees (support staff) of the respondent, the Goffstown School District (school district), may not obtain credit for services they rendered before July 1, 2001, pursuant to RSA 100-A:3, VI(d) (2001). We affirm.

Before discussing the facts relevant to this appeal, it is helpful to outline the basic framework of the NHRS. The State retirement system was created in 1945. *See* Laws 1945, ch. 183 (current version at RSA ch. 100-A). At that time, there were separate retirement systems for State employees, public school teachers, policemen and firemen. *See* Laws 1945, 201:1. These separate retirement systems were merged in 1967. *See* Laws 1967, 134:1.

Despite the merger, State employees, public school teachers, permanent policemen and permanent firemen are governed by a different set of rules than are other public employees. For instance, membership in the State retirement system for any State employee, teacher, permanent policeman or permanent fireman generally is automatic as "a condition of employment," RSA 100-A:3, I(a) (2001); membership for other local government employees generally is not, *see* RSA 100-A:20 (2001) (amended 2002).

Non-teacher school district employees may become members if their school district elects to make them eligible for State retirement benefits and the board sets an effective date of participation in the State retirement system. *See* RSA 100-A:20; *State Employees' Ass'n of N.H. v. Belknap County*, 122 N.H. 614, 619 (1982). Membership in the State retirement system is then optional for employees hired before the effective date of participation and compulsory for those hired after that date. *See Belknap County*, 122 N.H. at 619; RSA 100-A:22 (2001) (amended 2002).

We turn now to the facts of this case. In March 2001, the school district elected to have the support staff become eligible to participate in the NHRS. *See* RSA 100-A:20. The board subsequently set July 1, 2001, as the effective date for their participation. *See* RSA 100-A:20, I. In October 2001, the union inquired about whether the support staff could receive credit for services rendered before July 1, 2001, noting that in 1950 the school district had voted to participate in the State retirement system. A NHRS

benefit administrator advised that because the NHRS had no record of the school district's 1950 vote, the official date of participation for the support staff was July 1, 2001.

The union appealed this determination and sought relief for the support staff under RSA 100-A:3, VI(d), sometimes referred to as the employer oversight provision. This provision "provides a mechanism through which an employee may receive credit for prior service when the employer has failed to enroll him or her in the [NHRS]." *McKenzie v. City of Berlin*, 145 N.H. 467, 472 (2000). If an employer "through its own fault, and not the fault of the employee," has failed to enroll an "eligible employee" when the employee "became eligible for membership" in the NHRS or a predecessor system, "the employer and not the employee" pays for an actuarial statement, which is used to determine the cost of the prior service credit. RSA 100-A:3, VI(d)(1). The employer and employee must each pay one-half of the cost of the prior service credit. *See id.*; *City of Berlin*, 145 N.H. at 472. "If the employee is financially unable to pay his or her portion, then the employer pays its portion directly to the employee, and the employee receives no prior service credit." *City of Berlin*, 145 N.H. at 472; *see* RSA 100-A:3, VI(d)(3).

The union argued that the school district's 1950 vote entitled the support staff to membership in the State retirement system. The union contended that, under the employer oversight provision, the support staff were entitled to prior service credit from their pre-July 1, 2001 dates of hire and the school district was required to pay for one-half of the cost of the credit and the full cost of the actuarial statement. *See* RSA 100-A:3, VI(d).

In January 2002, a NHRS hearings examiner denied the union's requested relief. He determined that the support staff did not become "eligible" for membership in the NHRS until the board set July 1, 2001, as the official participation date. *See* RSA 100-A:20, I. Although the school district voted to allow the support staff to participate in the predecessor to the NHRS in 1950, the hearings examiner found that it never informed the predecessor retirement system of this fact. Therefore, no effective date of participation was set based upon that vote. Because the support staff were not "eligible" to participate in the NHRS before July 1, 2001, the hearings examiner ruled that they could not obtain credit for services rendered before that date under the employer oversight provision. *See* RSA 100-A:3, VI(d).

The hearings examiner informed the union that the support staff could, however, obtain credit for services rendered before July 1, 2001, under RSA 100-A:22. Pursuant to RSA 100-A:22, employees employed as of the effective date of participation (*i.e.*, July 1, 2001) are "credited with prior

service covering such periods of prior service . . . for which the employer is willing to make accrued liability contributions." If the employer is unable or unwilling to make these contributions, the employees may petition the board for the prior service credit "within 5 years from the date when the employer's participation becomes effective" and pay for it themselves. *Id.*; *see* RSA 100-A:3, VI(b) (2001) (amended 2002).

The union moved for "rehearing" in February 2002. The hearings examiner treated this motion as a request for adjudicative proceedings. *See* N.H. ADMIN. RULES, Ret 204.01. Accordingly, he conducted a pre-hearing conference and permitted the school district to file an otherwise untimely opposition to the motion. *See* N.H. ADMIN. RULES, Ret 204.02, 204.08. The school district did not object to this procedure. The hearings examiner recommended that the board find July 1, 2001, to be the effective date for support staff participation in the NHRS and concluded that the employer oversight provision applied only prospectively as of that date. The board upheld the hearings examiner's recommended decision on February 11, 2003. *See* N.H. ADMIN. RULES, Ret 204.09. In March 2003, the union timely filed a motion for rehearing, which the board denied in May 2003. *See* N.H. ADMIN. RULES, Ret 204.10. This petition for a writ of certiorari followed. *See* RSA 541:6 (1997).

We review the board's decision to determine whether it: (1) acted illegally with respect to jurisdiction, authority or observance of the law whereby it arrived at a conclusion that could not legally or reasonably be made; (2) acted arbitrarily, unreasonably, or capriciously; or (3) engaged in an unsustainable exercise of discretion. *See Petition of Bailey*, 146 N.H. 197, 198 (2001); *cf. State v. Lambert*, 147 N.H. 295, 296 (2001) (explaining unsustainable exercise of discretion standard).

I

We first address the school district's assertion that the union's petition for writ of certiorari is untimely because it was filed more than thirty days after the board denied the union's February 2002 motion for rehearing. *See* RSA 541:6; *Wentworth-Douglass Hosp. v. N.H. Dept. of Health & Welfare*, 131 N.H. 364, 366-67 (1988) (appropriate period for filing petition for writ of certiorari from state administrative decisions is thirty-day time limit imposed by RSA 541:6).

Although the union's February 2002 motion was termed a motion for rehearing, the record shows that the NHRS appropriately treated it as a request for adjudicative proceedings. *See* N.H. ADMIN. RULES, Ret 204.01. Accordingly, consistent with the NHRS' procedural rules, the hearings examiner held a pre-hearing conference and issued a recommended

disposition to the board. *See id.*; N.H. ADMIN. RULES, Ret 204.02, 204.08. The school district did not object to this procedure. For its part, when it accepted the hearings examiner's recommendation, the board notified the parties that any dissatisfied party could request reconsideration of its decision within thirty days. *See* N.H. ADMIN. RULES, Ret 204.09, 204.10.

■ The record demonstrates that the NHRS treated the union's March 2003 motion for rehearing, filed thirty days after the board adopted the hearings examiner's recommended disposition, as the first motion for rehearing. *See* N.H. ADMIN. RULES, Ret 204.10. Accordingly, after the board denied the motion, it notified the parties that the denial exhausted "all administrative proceedings" and entitled the parties to appeal by writ of certiorari to this court. *See* RSA 541:6.

Under these circumstances, we conclude that the union's petition is timely.

## II

We now turn to the union's argument that the board erroneously interpreted the employer oversight provision. We are the final arbiters of legislative intent as expressed in the words of a statute considered as a whole. *Big League Entm't v. Brox Indus.*, 149 N.H. 480, 483 (2003). We interpret statutes in the context of the overall statutory scheme and not in isolation. *Id.* We begin our task by examining the statutory language itself, where possible ascribing the plain and ordinary meanings to the words used. *Id.* We do not look beyond the language of a statute to determine legislative intent if the language is clear and unambiguous. *See Pennelli v. Town of Pelham*, 148 N.H. 365, 368-69 (2002).

The relevant text of the employer oversight provision follows:

> (1) In the case of an employer which through its own fault, and not the fault of the employee, failed to enroll an *eligible* employee *at the time such employee became eligible for membership in this retirement system or a predecessor system*, the employer and not the employee shall pay the cost of the actuary's statement obtained under this subparagraph. . . . In addition, if such employee has not received final approval of the board before July 1, 1989, to receive credit for such service, the employer shall pay ½ of the amount determined by the actuary and the employee shall pay ½. Upon payment, and with the approval of the board, the member shall receive credit for prior service. . . .
>
> (2) For the purposes of subparagraph (d) with respect to service rendered after June 30, 1989, only, any case of failure to

enroll a person after June 30, 1989, . . . shall be presumed to be the fault of the employer. . . .

(3) In any case under subparagraph (d) in which the employee is required to pay a portion of the amount determined by the actuary, if the employee demonstrates to the satisfaction of the board that the employee is financially incapable of paying the employee portion of the amount determined by the actuary, then the employer shall pay the employer portion . . . directly to the employee, and the employee shall not receive credit for such prior service. . . .

RSA 100-A:3, VI(d) (emphasis added). A plain reading of this statute demonstrates that it applies only when the employer has failed to enroll an "eligible" employee.

RSA 100-A:20, I, governs how a non-teacher school district employee may become "eligible" to participate in the NHRS. *See* RSA 100-A:1, V (Supp. 2003). It provides, in pertinent part:

The governing board of any . . . school district . . . may, by resolution legally adopted, in form approved by the board . . . , elect to have its officers and employees become eligible to participate in the retirement system. After such election, such body shall be known as an employer for the purposes of this chapter. The board . . . shall set the date when the participation of the officers and employees of any employer shall become effective, and then such officers and employees may become members and participate herein . . . .

RSA 100-A:20, I.

The statute governing how non-teacher school district employees became eligible to participate in the State retirement system in effect in 1950 similarly provided, in pertinent part:

The governing board of any . . . school district . . . may, by resolution legally adopted, in form approved by the board of trustees of the [predecessor] retirement system, elect to have its officers and employees become eligible to participate in the [predecessor] retirement system. After such election, such body shall be known as an employer for the purposes of this act . . . . The board of trustees shall set the date . . . when the participation of the officers and employees of any employer shall become effective, and then such officers and employees may become

members of the [predecessor] retirement system and participate therein . . . .

Laws 1945, 201:2.

■ We agree with the school district that pursuant to both RSA 100-A:20, I, and Laws 1945, 201:2, two events must occur before a non-teacher school district employee is "eligible" to participate in the State retirement system. First, the school district must elect to have its non-teacher employees become "eligible to participate" in the retirement system. RSA 100-A:20, I; Laws 1945, 201:2. Second, the board must "set the date when the participation of the officers and employees . . . shall become effective." RSA 100-A:20, I; Laws 1945, 201:2. Only after both events have occurred may the non-teacher employees then "become members" and "participate" in the State retirement system. RSA 100-A:20, I; Laws 1945, 201:2.

■ In 1950, only one of these predicate events occurred: the school district elected to have the support staff become eligible to participate in the State retirement system. The board of trustees of the predecessor system did not set an effective date for support staff participation, however. Accordingly, as the board aptly determined, the support staff did not then become "eligible" to participate in the State retirement system. They did not become "eligible" until the board set July 1, 2001, as the participation date.

■ Because the support staff were not "eligible" to participate in the NHRS until July 1, 2001, they may not rely upon the employer oversight provision to "buy-back" credits for services rendered before that date. We hold that the board's ruling comports with the clear language of the relevant statutes. We conclude, therefore, that the board did not act illegally with respect to its jurisdiction, authority or observance of the law and that its exercise of discretion is sustainable and is not arbitrary, unreasonable or capricious. *See Petition of Bailey*, 146 N.H. at 198; *cf. Lambert*, 147 N.H. at 296.

The union argues that the employer oversight provision permits the support staff to "buy-back" credits for services rendered before July 1, 2001, because the school district became an "employer" for State retirement purposes either when it began enrolling teachers in the State retirement system or when it voted in 1950 to make the support staff eligible for such benefits. The dispositive issue is not, however, when the school district became an "employer" for State retirement purposes, but rather when the support staff became "eligible" for enrollment in the State retirement system. Under RSA 100-A:20, the support staff did not become

eligible until July 1, 2001, when the board set an effective date for their participation. *See* RSA 100-A:20, I; Laws 1945, 201:2.

The union mistakenly relies upon our decisions in *Belknap County* and *City of Berlin* to argue for a different result. Both cases are distinguishable from the instant appeal. In each, the employees who were permitted to "buy-back" their prior years of service were "eligible" to participate in the State retirement system as of their dates of hire. *See Belknap County*, 122 N.H. at 619-21, 625-26; *City of Berlin*, 145 N.H. at 468-70, 472-73. The issues on appeal concerned the employers' failure to enroll these employees as of their dates of hire despite the statutory obligation to do so. *See Belknap County*, 122 N.H. at 619-21, 625-26; *City of Berlin*, 145 N.H. at 468-73.

In *Belknap County*, although the county had voted to include its officers and employees in the State retirement system in 1946 and although the system's board of trustees had established July 1, 1946, as the effective date of participation, the county had enrolled "only a handful of employees." *Belknap County*, 122 N.H. at 619. Among other remedies, the NHRS was ordered to ensure that the county enrolled the eligible employees in the retirement system and the county was ordered to permit the employees "to 'buy-back' all prior years of creditable service." *Id.* at 620-21, 625-26.

Similarly, in *City of Berlin*, city employees became *eligible* to participate in the State retirement system in 1946. *See City of Berlin*, 145 N.H. at 468. Despite this, the city enrolled some employees in the State plan and others in a municipal retirement plan. *See id.* at 468-70. Because the city never effectively revoked its decision to join the State retirement plan, we held that the city was obligated to enroll *all* of its employees in the State plan. *Id.* at 468, 470-71. Its failure to do so entitled the plaintiff employees to a remedy under RSA 100-A:3, VI(d). *Id.* at 472-73.

Although the opinion in *City of Berlin* does not discuss when the board of trustees of the 1946 State retirement system set the effective date of employee participation, because the issue was not contested, we assume that it did so. Under the statutory scheme, the city could not have enrolled employees in the State retirement system unless such a date had been set. *See* Laws 1945, 201:2; *Belknap County*, 122 N.H. at 619.

Alternatively, the union argues that the employer oversight provision should be interpreted to permit the support staff to "buy-back" prior service credits because it is a remedial statute and to interpret it in that manner is fair. We hold that the NHRS did not err by interpreting the statute according to its plain meaning. The board may act only in accord with its enabling statute, RSA chapter 100-A, which provides no statutory

authority to waive the requirements of the employer oversight provision. *See Petition of Barney*, 142 N.H. 798, 801 (1998). Accordingly, it did not err by interpreting the provision as written.

### III

The union also asserts that the board's statutory interpretation deprives the support staff of their constitutional right to a remedy. *See* N.H. CONST. pt. I, art. 14. Part I, Article 14 of the State Constitution provides:

> Every subject of this state is entitled to a certain remedy, by having recourse to the laws, for all injuries he may receive in his person, property, or character; to obtain right and justice freely, without being obliged to purchase it; completely, and without any denial; promptly, and without delay; conformably to the laws.

The purpose of this provision "is to make civil remedies readily available, and to guard against arbitrary and discriminatory infringements on access to courts." *Minuteman, LLC v. Microsoft Corp.*, 147 N.H. 634, 640 (2002) (quotation omitted). The right to a remedy is not a fundamental right, but is relative and does not prohibit all impairments of the right of access. *Id.*

■ Although the support staff have no remedy under the employer oversight provision, they may have equitable remedies against the school district for failing to notify the NHRS of the 1950 vote. *See Belknap County*, 122 N.H. at 625-26. As the board aptly noted:

> The [union]'s claim regarding the [school d]istrict's failure to enroll eligible staff employees after the March 1950 vote may be actionable against the [school d]istrict, but it clearly is not actionable against the NHRS because the NHRS enrolled the [support staff] in a timely manner when it received proper notification from the [school d]istrict.

Moreover, we note that the support staff may purchase prior service credits themselves under RSA 100-A:22 or ask the school district to purchase them. *See* RSA 100-A:22. We do not hold that absent RSA 100-A:22, RSA chapter 100-A is constitutionally infirm. *See Petition of Abbott*, 139 N.H. 412, 416-17 (1995). We merely note that RSA 100-A:22 provides an alternative mechanism by which the support staff may receive credit for services rendered before July 1, 2001.

Under these circumstances, we reject the union's assertion that denying the support staff a remedy under the employer oversight provision violates their constitutional right to a remedy. *See* N.H. CONST. pt. I, art. 14.

*Affirmed.*

NADEAU, DALIANIS and DUGGAN, JJ., concurred.