Public Employee Labor Relations Board
No. 2008-032

APPEAL OF STATE EMPLOYEES' ASSOCIATION OF NEW HAMPSHIRE, INC., SEIU, LOCAL 1984
(New Hampshire Public Employee Labor Relations Board)

Argued: November 19, 2008
Opinion Issued: January 14, 2009

*Cook & Molan, P.A.*, of Concord (*Glenn R. Milner* on the brief and orally), for the petitioner.

*Nolan Perroni Harrington, LLP*, of Lowell, Massachusetts (*Peter J. Perroni* on the brief and orally), for the respondent.

DALIANIS, J. The petitioner, the State Employees' Association of New Hampshire, Inc., SEIU, Local 1984 (SEA), appeals an order of the New Hampshire Public Employee Labor Relations Board (PELRB) denying SEA's motion to dismiss the certification petitions filed by the respondent, the New England Police Benevolent Association (NEPBA), in which NEPBA sought to represent a bargaining unit of certain officers employed by the New Hampshire Department of Corrections (DOC). In denying the motion to dismiss, the PELRB ruled that the 2007-2009 collective bargaining agreement between the State and SEA did not bar the certification petitions. *See* RSA 273-A:11, I(b) (1999). We reverse and remand.

The parties stipulated to or the record supports the following facts. SEA has negotiated with the State on behalf of DOC employees since 1976, when the PELRB recognized SEA as their representative pursuant to *State Employees' Assoc. v. New Hampshire Public Employee Labor Relations Board*, 116 N.H. 653, 655-56 (1976). *See Appeal of State Employees' Assoc. of N.H.*, 156 N.H. 507, 508 (2007). The most recent collective bargaining agreement (CBA) between the State and SEA was executed on July 19, 2007. Article 21.1 of that agreement provides: "This Agreement as executed by the Parties is effective July 1, 2007 and shall remain in full force and effect through June 30, 2009 or until such time as a new Agreement is executed." The 2005-2007 CBA included a similar provision: "This Agreement as executed by the Parties is effective July 1, 2005 and shall remain in full force and effect through June 30, 2007 or until such time as a new Agreement is executed."

The State and SEA began negotiating the 2007-2009 CBA in January 2007. After more than thirty bargaining sessions, they reached a tentative

oral agreement on June 14, 2007, which was reduced to a writing the following day, and finalized on or before June 20, 2007. This tentative agreement was submitted to the joint committee on employee relations for approval, *see* RSA 273-A:9 (Supp. 2008), and, on June 27, 2007, its cost items were funded by the legislature, *see* RSA 273-A:3, II (1999). The tentative agreement was submitted to union members on June 22, 2007; voting on ratification closed on July 5, 2007. On July 9, 2007, NEPBA filed the instant petitions. Later that evening, SEA officials counted union member votes and certified that the tentative agreement was ratified by a vote of 1607 to 1405. On July 19, 2007, the Governor and SEA President signed the 2007-2009 CBA.

Even though the 2007-2009 CBA was not actually signed until July 19, 2007, its effective date, pursuant to Article 21.1, was July 1, 2007. As a result, various new terms and conditions of employment became effective for SEA bargaining unit employees before that CBA was signed. For instance, effective July 1, 2007, SEA bargaining unit members received increased reimbursement for certain expenditures and their dental plan began covering dental x-rays at 100%. Similarly, salary increases and employee contribution to health insurance premiums became effective July 6, 2007.

SEA moved to dismiss the NEPBA petitions on the ground that they were barred by the "contract bar rule" set forth in RSA 273-A:11, I(b). The PELRB hearing officer disagreed. SEA moved for rehearing, which the PELRB denied. The representation election was held in January 2008. NEPBA prevailed in the election, and this appeal followed.

When reviewing a decision of the PELRB, we defer to its findings of fact, and, absent an erroneous ruling of law, we will not set aside its decision unless the appealing party demonstrates by a clear preponderance of the evidence that the order is unjust or unreasonable. *Appeal of Merrimack County*, 156 N.H. 35, 39 (2007); *see* RSA 541:13 (2007).

Resolving the issues on appeal requires that we interpret various provisions of RSA chapter 273-A. We are the final arbiters of legislative intent as expressed in the words of a statute considered as a whole. *Appeal of Goffstown Educ. Support Staff*, 150 N.H. 795, 799 (2004). We begin by examining the statutory language itself, where possible ascribing the plain and ordinary meanings to the words used. *Id.* We do not look beyond the language of a statute to determine legislative intent if the language is clear and unambiguous. *Id.* Moreover, we interpret statutes in the context of the overall statutory scheme and not in isolation. *Id.*

RSA 273-A:11, I(b), which governs the timing of representation elections, states:

> Public employers shall extend . . . to the exclusive representative of a bargaining unit . . . [t]he right to represent the bargaining unit exclusively and without challenge during the term of the collective bargaining agreement. Notwithstanding the foregoing, an election may be held not more than 180 nor less than 120 days prior to the budget submission date in the year such collective bargaining agreement shall expire.

Under this provision, referred to as the "contract bar rule," *see Appeal of State Employees' Assoc. of N.H.*, 156 N.H. at 508, a CBA bars an election for a new representative unless the election occurs "not more than 180 nor less than 120 days prior to the budget submission date in the year such collective bargaining agreement shall expire." RSA 273-A:11, I(b).

■ While the statutory contract bar rule concerns actual elections, the PELRB has promulgated *New Hampshire Administrative Rules*, Pub. 301.01 (Rule 301.01), which applies to certification petitions, and provides, in pertinent part:

> (a) A petition for certification as the exclusive representative of a bargaining unit having no certified representative may be filed at any time. A petition for certification as the exclusive representative of a bargaining unit for which a collective bargaining agreement constituting a bar to election under RSA 273-A:11, I (b) presently exists shall be filed no more than 240 days and no less than 180 days prior to the budget submission date of the affected public employer in the year that agreement expires, notwithstanding any provisions in the agreement for extension or renewal.
> (b) Any petition filed less than 180 days prior to the budget submission date of the affected public employer shall be accompanied by an explanation of why the petition could not have been filed sooner. The board shall refuse to entertain any petition filed so close to the budget submission date of the affected employer that the board cannot reasonably conduct the election called for in the petition within 120 days of the budget submission date.

Under this rule, where, as here, an exclusive bargaining representative is in place, a certification petition may not be filed sooner than 210 days nor later than 150 days before the employer's budget submission date in the year that the agreement expires. "The purpose for creating such a window is to allow for the conduct of an orderly election and still leave sufficient time, deemed 120 days prior to the budget submission date, for the parties to negotiate a CBA." Donald E. Mitchell, N.H. Public Employee Labor

Relations Board, *Selected Procedures and Practices before the New Hampshire Public Employee Labor Relations Board, at* http://www.nh.gov/pelrb/about.htm#A.%20PETITION%20FOR%20CERTIFICATION%20OF%20BARGAINING%20UNIT. Rule 301.01(a) ensures that "proper certification petitions submitted during the filing window will ultimately result in the conduct of an election within the 'election window' " set forth in RSA 273-A:11, I(b). *Classified Employee Petitioners of the New Hampshire Office of Information Technology,* No. S-0411-3 (PELRB Oct. 16, 2006), *at* http://www.nh.gov/pelrb/Decisions/2006/2006-181a.htm.

The parties' dispute centers upon the first sentence of RSA 273-A:11, I(b), which insulates a certified representative from challenge "during the term of the collective bargaining agreement." NEPBA contends that its petitions were not filed "during the term of the collective bargaining agreement," because by July 9, 2007, the 2005-2007 CBA had expired and the 2007-2009 CBA had not yet been executed. Relying upon decisions by the National Labor Relations Board (NLRB) interpreting its contract bar rule, NEPBA asserts that, for a contract to act as a bar to a certification petition, it must be signed by the parties. *See Appalachian Shale Products Co.,* 121 N.L.R.B. 1160, 1162 (1958). Because the 2007-2009 CBA was not signed until after NEPBA filed its petitions, it did not bar them.

SEA counters that, even if we assume, without deciding, that the 2005-2007 CBA expired on June 30, 2007, *but cf. Appeal of N.H. Dep't of Safety,* 155 N.H. 201, 203 (2007), the 2007-2009 CBA barred the petitions because before NEPBA filed them, this CBA had been reduced to a writing, the legislature had approved legislation to fund all of its cost items, and voting on ratification had closed. Under these circumstances, SEA urges, the 2007-2009 CBA barred NEPBA's petitions.

Based upon our review of the relevant statutory scheme, construed as a whole, we hold that SEA's position best comports with the legislature's intent as expressed in the plain meaning of the pertinent statutes. We conclude, therefore, that the PELRB erred when it ruled that the 2007-2009 CBA could not act as a bar to NEPBA's petitions because the CBA had not been executed when those petitions were filed.

RSA chapter 273-A governs collective bargaining for state employees. This chapter obligates the State to negotiate with the certified representative of its employees regarding all cost items and "terms and conditions of employment affecting state employees in the classified system." RSA 273-A:9; *see* RSA 273-A:3 (1999). A cost item, as defined by RSA 273-A:1, IV (1999), is "any benefit acquired through collective bargaining whose implementation requires an appropriation by the legislative body of the public employer with which negotiations are being conducted." Any party seeking to bargain must serve written notice of this intent at least 120 days

before the State's budget submission date. *See* RSA 273-A:3, II(a). Bargaining must begin "not later than 120 days before the deadline for submission of the governor's proposed operating budget." *Id.*

 Assuming that the parties reach agreement, they must then submit the cost items contained therein to the proper legislative body. RSA 273-A:3, II(b); *see Appeal of Inter-Lakes Sch. Bd.*, 147 N.H. 28, 34 (2001). CBAs negotiated between a public employer and the union representing its employees are unenforceable until the proper legislative body ratifies the agreement's cost items. *See Appeal of Timberlane Reg. School Bd.*, 142 N.H. 830, 835 (1998). A public employer commits an unfair labor practice by refusing to negotiate in good faith with the exclusive representative of its employees as well as by failing to submit to the legislative body any negotiated cost item. RSA 273-A:5, I(e) (1999).

The New Hampshire legislature is the legislative body that approves the cost items in CBAs affecting state employees. *See* RSA 273-A:9, V(d). The joint committee on employee relations reviews the items first and then submits recommendations to the legislature. *See* RSA 273-A:9, V. If the legislature rejects any part of the submission or takes any action that would result in modifying the terms of the cost items submitted to it, "either party may reopen negotiations on all or part of the entire agreement." RSA 273-A:3, II(b).

"Every agreement negotiated under the terms of this chapter shall be reduced to writing and shall contain workable grievance procedures." RSA 273-A:4 (Supp. 2008). Moreover, fourteen days after the parties to a CBA execute it, they must file it with the PELRB. *See* RSA 273-A:16 (Supp. 2008).

 Nothing in this legislative scheme suggests that a CBA remains unenforceable until it is executed. While the scheme contemplates that such agreements will be signed, *see* RSA 273-A:16, it does not require that execution take place before they are enforceable. There is no requirement, for instance, that the legislature act only upon signed CBAs. *Compare* RSA 273-A:3 *with* Mass. Gen. Laws ch. 150E, § 7 (West Supp. 2008). Execution, under these circumstances, is merely a ministerial act. *See* 10 E. MCQUILLIN, THE LAW OF MUNICIPAL CORPORATIONS § 29.23, at 349 (3d ed. 1999).

 Given this legislative scheme, we conclude that the PELRB erred when it ruled that the 2007-2009 CBA could not bar NEPBA's petitions because it was unsigned when NEPBA filed them. The record shows that when NEPBA filed its petitions, not only was the CBA reduced to a writing, as required by RSA 273-A:4, but its cost items had been approved by the

legislature, *see* RSA 273-A:3, II(b), and union members had completed voting on whether to ratify it. Under these circumstances, we hold that NEPBA's petitions were filed "during the term" of the 2007-2009 CBA, and, thus, that the 2007-2009 CBA could bar them despite the fact that it was unsigned.

NEPBA argues that the PELRB's decision is correct, in part, because it is consistent with decisions of the NLRB. *See University System v. State*, 117 N.H. 96, 99 (1977) (urging newly created PELRB to look for guidance to NLRB decisions). Before we address this contention on its merits, by way of background, we explain the NLRB's contract bar rule.

Under the NLRB's contract bar rule, a contract of definite duration that is reduced to a writing and executed by the parties "will act as a bar for up to 3 years of its term to an election petition filed by an employee or rival union after the contract is executed." *City Markets*, 273 N.L.R.B. 469, 469 (1984). The NLRB, however, has established a thirty-day period during which petitions may be filed, notwithstanding the existence of a valid CBA. *See N.L.R.B. v. F & A Food Sales, Inc.*, 202 F.3d 1258, 1260 n.1 (10th Cir. 2000). Accordingly, "a valid contract not exceeding three years in duration will bar a representation election unless a petition is filed more than 60 and less than 90 days before the end of the contract." *N.L.R.B. v. Dominick's Finer Foods, Inc.*, 28 F.3d 678, 683 (7th Cir. 1994). At the conclusion of this window period, "the final 60 days of [an] existing collective bargaining agreement is an 'insulated period' during which the contract bars petitions for elections." *Crompton Company, Inc.*, 260 N.L.R.B. 417, 418 (1982).

The contract bar doctrine is designed to promote stability in the collective bargaining relationship and, at the same time, afford employees a reasonable opportunity to change or eliminate their bargaining representative. *East Manufacturing Corporation*, 242 N.L.R.B. 5, 6 (1979). "Basic to the whole . . . contract-bar policy is the proposition that the delay of the right to select representatives can be justified only where stability is deemed paramount." *Paragon Products Corporation*, 134 N.L.R.B. 662, 663 (1961).

Because the NLRB's contract bar "prevents employees from freely choosing representation over a specified period" not to exceed three years, *N.L.R.B. v. Arthur Sarnow Candy Co., Inc.*, 40 F.3d 552, 557 (2d Cir. 1994), the NLRB has required that, to serve as a bar, the agreement "must contain substantial terms and conditions of employment deemed sufficient to stabilize the bargaining relationship," and be signed by the parties before a petition is filed, "even though the parties consider it properly concluded and put into effect some or all of its provisions." *Appalachian Shale Products, Co.*, 121 N.L.R.B. at 1162-63. To satisfy the signature requirement, however, "the document signed need not be a formal collec-

tive-bargaining agreement, nor must the signatures appear on the same document." *Waste Management of Maryland, Inc.*, 338 N.L.R.B. 1002, 1002 (2003). "Recognizing that parties do not always ceremonially sit down to sign a formal, final, document upon the successful conclusion of negotiations, the [NLRB] has held that informal documents laying out substantial terms and conditions of employment can serve as a bar, so long as those informal documents are signed." *Id.* at 1002-03.

"The rule of *Appalachian Shale*, that only a written agreement will bar the processing of an election petition, is essentially an effort to avert the danger that unions and employers may collude to defeat employees' representational wishes on the basis of illusory or fabricated agreements." *YWCA of Western Massachusetts*, 349 N.L.R.B. 762, 764 (2007). "Requiring evidence of an executed, written agreement is designed to assure that employee rights are protected from such deception." *Id.*

Under the NLRB's contract bar rule, if a petition is filed before the execution date of a contract that is effective either immediately or retroactively and is otherwise timely, the contract subsequently entered into will not bar the processing of the petition and the holding of an election. *City Markets*, 273 N.L.R.B. at 469. If the incumbent union prevails in the election, any contract executed with the employer is valid and binding. *Id.* If, however, the incumbent union loses, the contract is null and void. *Id.* at 469-70.

Significantly, the NLRB's contract bar rule, unlike New Hampshire's contract bar rule, is not mandated by statute. Rather, it "is an administrative device early adopted by the [NLRB] in the exercise of its discretion as a means of maintaining stability of collective bargaining relationships." *Direct Press Modern Litho, Inc.*, 328 N.L.R.B. 860, 860-61 (1999) (quotation omitted). Because it is an administrative device, "[t]he [NLRB] has discretion to apply a contract bar or waive its application consistent with the facts of a given case, guided by [its] interest in stability and fairness in collective-bargaining agreements." *Id.* at 861. By contrast, the New Hampshire contract bar rule is a creature of statute, and the PELRB has no discretion to waive it. *See Appeal of State Employees' Assoc. of N.H.*, 156 N.H. at 511.

Given the NLRB's broad discretion to waive its own contract bar rule, including its self-imposed requirement that to act as a bar, a contract must be signed, we have no way of knowing whether, if faced with identical facts involving a private sector employer, the NLRB would have ruled as the PELRB did. We, therefore, are not persuaded that the PELRB's decision is consistent with the NLRB's jurisprudence. Had the NLRB been faced with these facts — a statutory mandate that bargaining take place within a certain time frame and that all cost items be approved by a legislative

body, approval by the legislature of the legislation necessary to fund the agreement's cost items, and a written CBA which union members had already voted to ratify — it may well have waived its own contract bar rule. Under these circumstances, the interest in stability in labor relations appears to outweigh the employees' interest in a change of bargaining representative. Collusion is not an issue under these circumstances, and, thus, "the policy considerations justifying the *Appalachian Shale* rule do not arise in this case." *YWCA*, 349 N.L.R.B. at 764.

NEPBA argues as well that the PELRB's decision is correct because it is consistent with the decisions of other jurisdictions. NEPBA, however, has not directed us to any jurisdiction with a statutory scheme similar to New Hampshire's that has adopted the NLRB's requirement that a CBA be signed before it may bar a petition. To the contrary, the three jurisdictions to which NEPBA points, Maine, Massachusetts and Vermont, have statutory schemes that differ from ours.

Maine's contract bar rule, set forth by statute, *see* 26 Me. Rev. Stat. Ann. § 967(2) (West 2007), is expressly based upon the NLRB's rule. *See MSAD 16 Support Staff Assoc./MEA/NEA*, No. 00-UD-04 (M.L.R.B. Apr. 26, 2000), *at* http://janus.state.me.us/mlrb/decisions/rep/00-ud-04.htm. Thus, the fact that Maine has adopted the NLRB's signature requirement is consistent with its overall intent to mirror the NLRB's contract bar rule. *See id.*

By contrast, the Vermont contract bar rule is merely an administrative rule that the Vermont Labor Relations Board may apply or waive as the facts of a given case may demand. *See* Vt. Labor Relations Board, *Case Law Summary of Labor Relations Decisions*, *at* http://www.state.vt.us/vlrb/NCaseLaw_II.htm#A.

Similarly, the Massachusetts rule is an administrative rule that the Massachusetts Division of Labor Relations may waive for good cause shown. *See* 456 Code Mass. Rules § 14.06(1)(a), *available at* http://www.lawlib.state.ma.us/456CMR14.pdf. Moreover, the statutory scheme in Massachusetts expressly requires that a public sector CBA be executed before it is submitted to the Massachusetts Labor Commission for review and to the legislature for approval of its cost items. *See* Mass. Gen. Laws ch. 150E, §§ 1, 7 (Supp. 2008). Accordingly, that Massachusetts requires a collective bargaining agreement to be signed before it may act as a bar is consistent with the statutory scheme there.

Because we conclude that the PELRB erred when it ruled that the 2007-2009 CBA could not bar NEPBA's petitions because it was not signed before they were filed, we reverse its ruling and remand for further proceedings consistent with this opinion. We do not address whether, even though NEPBA filed its petitions during the term of the 2007-2009 CBA,

they were nonetheless timely as having been filed "no more than 240 days and no less than 180 days prior to the budget submission date of the affected public employer in the year that agreement expires," N.H. ADMIN. RULES, Pub 301.01, because this issue is not before us. Nor do we address whether the January 2008 election took place "not more than 180 nor less than 120 days prior to the budget submission date in the year such collective bargaining agreement shall expire." RSA 273-A:11, I(b). These are among the issues that the parties may address on remand.

*Reversed and remanded.*

BRODERICK, C.J., and DUGGAN, GALWAY and HICKS, JJ., concurred.