Hillsborough-northern judicial district
No. 2008-689

DIANE CLAPP

v.

GOFFSTOWN SCHOOL DISTRICT

Argued: May 5, 2009
Opinion Issued: August 5, 2009

*Molan, Milner & Krupski, PLLC*, of Concord (*Glenn R. Milner* on the memorandum of law and orally), for the petitioner.

*Sulloway & Hollis, P.L.L.C.*, of Concord (*William D. Pandolph* on the brief and orally), for the respondent.

HICKS, J. The respondent, Goffstown School District (district), appeals an order of the Trial Court (*Abramson*, J.) granting the petitioner, Diane Clapp, restitution for the unjust enrichment of the district resulting from its failure to partially fund a pension on her behalf. We reverse.

The record supports the following facts. Clapp worked as a principal's assistant in the district from July 1971 to July 2004. Each year, Clapp signed a new employment contract running from July 1 to June 30 of the next year. Among other things, these contracts governed Clapp's compensation and "fringe benefits." When Clapp started working for the district in 1971, she neither expected nor received pension or retirement benefits.

Although enrollment in the New Hampshire Retirement System (NHRS) is mandatory for teachers in this state, school districts may choose whether to enroll support staff. *See* RSA 100-A:3, I(a) (Supp. 2008); RSA

100-A:20, I (2001); *cf. State Employees' Ass'n of N.H. v. Belknap County*, 122 N.H. 614, 619 (1982). Sometime in the 1980s, the district established a non-NHRS retirement saving plan, to which Clapp contributed through payroll deductions. In the late 1980s, a union started bargaining on behalf of the district's support staff. Thereafter, Clapp's employment contracts were subject to collective bargaining agreements between the union and the district.

In 1999, Clapp joined a committee to investigate the possibility of enrolling district support staff in the NHRS. Sometime before December 20, 1999, Clapp discovered that the district had voted on March 18, 1950 (the 1950 vote) to include support staff in the prior state retirement system (prior system). The prior system was established in 1945 and was the predecessor to the modern NHRS. *See Petition of Goffstown Educ. Support Staff*, 150 N.H. 795, 796 (2004). However, for reasons unknown, a participation date for enrollment in the prior system was never established. *Id.* at 797. Consequently, the district support staff were never enrolled. *See id.* at 801. The record does not indicate that the parties, or the NHRS, had any knowledge of the 1950 vote at the time Clapp discovered it. There is no indication that the 1950 vote was rescinded.

Enrollment in the NHRS is important to the district's support staff because, in addition to prospective retirement benefits, enrollment allows employees to purchase retirement benefits credit for their years of prior service. RSA 100-A:3, VI (Supp. 2008); RSA 100-A:22 (Supp. 2008); *see, e.g., McKenzie v. City of Berlin*, 145 N.H. 467, 472 (2000). In some cases, the cost of prior service credit is split between employer and employee. RSA 100-A:3, VI(d)(1) (2001). In other cases, when an employer is "unable or unwilling to make [accrued liability] contributions," employees may petition to purchase the credit themselves. RSA 100-A:22. Clapp and the union did not initially ask the district to pay for any retroactive credit. As stated in a January 2001 address to the district budget committee, "[a]t this time we [the union] are not asking for retroactive payments by the School district. We just want to be part of the NH Retirement System as of July 1, 2001." On March 13, 2001, the district voted to enroll all support staff employees in the NHRS (the 2001 vote) pursuant to RSA 100-A:20. *Goffstown*, 150 N.H. at 796. The district set July 1, 2001, as the effective participation date. *Id.*

After the 2001 vote, the committee that Clapp joined began researching the circumstances of the 1950 vote and did seek prior service credit from the district, on the grounds that the 1950 vote entitled the employees to retirement benefits for each year that they worked after 1950. *See id.* at 797. The district refused, and the union petitioned the NHRS for assistance. The NHRS denied the union's request because the NHRS had no

record of the 1950 vote, no participation date was ever set, and thus the union employees had not become eligible for NHRS membership until July 1, 2001. *Id.* The Board of Trustees (board) of the NHRS upheld the decision, and the union petitioned this court for review. *Id.* at 798.

We affirmed the board's ruling, holding that the employer oversight provision, RSA 100-A:3, VI(d) (2001), did not apply to the union and thus did not entitle the employees to retroactive credit. *Id.* at 800-01. Although the district could not be forced to pay for the credit, we pointed out that employees could purchase the credit themselves under RSA 100-A:22 (2001) (amended 2002, 2004, 2006) or ask their employer to purchase it. *Id.* at 803. We also held that the board's decision did not deprive the employees of their constitutional right to a remedy. *Id.* In the course of rejecting the argument that Part I, Article 14 of the State Constitution rendered RSA chapter 100-A infirm, we said that, "[a]lthough the support staff have no remedy under the employer oversight provision, *they may have equitable remedies against the school district* for failing to notify the NHRS of the 1950 vote." *Id.* (emphasis added).

Clapp subsequently purchased twenty-eight years of prior service credit and sought reimbursement from the district for half of the cost. The district refused. Clapp then brought this suit seeking declaratory judgment and recovery under theories of negligence and unjust enrichment. Clapp specifically sought the full cost of the credit she purchased plus attorney's fees. The trial court denied Clapp's petitions for declaratory judgment, negligence, and attorney's fees, and declined to address whether the district had a duty to inform the NHRS of the 1950 vote. The trial court granted Clapp's petition for unjust enrichment on the theory that the district retained funds it previously voted to spend on behalf of the support staff.

The district appeals the trial court's ruling that it was unjustly enriched, arguing that: (1) it made no contributions to the NHRS for any employee before July 1, 2001; (2) there was insufficient evidence of any wrongdoing on its part; (3) Clapp was paid all she was contractually entitled to receive; and (4) the trial court failed to address whether the district received a benefit that it would be unconscionable for it to retain. Clapp did not cross-appeal any decision of the trial court, and now argues that the trial court's decision was within its "broad and flexible equitable powers" because "[t]he equities of this case plainly favor [her]."

We first address the proper standard of review. On appeal, the district argues that because the trial court did not conduct an evidentiary hearing, "[we] may review the matter without any deference to the trial court's findings and rulings." We disagree. The trial court has "broad and flexible

equitable powers which allow it to shape and adjust the precise relief to the requirements of the particular situation." *Claremont School Dist. v. Governor (Costs and Attorney's Fees)*, 144 N.H. 590, 594 (1999) (quotation and ellipsis omitted). "The propriety of affording equitable relief in a particular case rests in the sound discretion of the trial court." *Foley v. Wheelock*, 157 N.H. 329, 332 (2008) (quotation omitted). Consequently, we review a trial court's equitable award of damages for an unsustainable exercise of discretion. *Id.* To show an unsustainable exercise of discretion, the district must demonstrate that the court's ruling was clearly unreasonable or untenable to the prejudice of its case. *Id.* Although awarding equitable relief is within the authority of the trial court, that "discretion must be exercised, not in opposition to, but in accordance with, established principles of law." *RAL Automotive Group v. Edwards*, 151 N.H. 497, 499-500 (2004) (quotation omitted).

The trial court's order acknowledged its own broad discretion in granting equitable remedies, stating that a grant of relief is properly "exercised according to the circumstances and exigencies of the case." The court ruled that the district "was unjustly enriched in this case, because, at least, it passively accepted the benefit of retaining funds it voted in 1950 to spend on behalf of the support staff." The court correctly ruled that the district need not have been at fault to find unjust enrichment. *See Petrie-Clemons v. Butterfield*, 122 N.H. 120, 127 (1982) (holding that unjust enrichment may follow from wrongful acts *or* where one "innocently receives a benefit and passively accepts it"). The court erred, however, in ruling that it was sufficient that the district was unjustly enriched because it "kept the money it agreed to pay to the NHRS on behalf of the support staff."

■ Unjust enrichment is an equitable remedy, found where an individual receives "a benefit which would be *unconscionable* for him to retain." *Kowalski v. Cedars of Portsmouth Condo. Assoc.*, 146 N.H. 130, 133 (2001) (emphasis added; quotation omitted). However, "[w]hile it is said that a defendant is liable if 'equity and good conscience' requires, this does not mean that a moral duty meets the demands of equity." *University v. Forbes*, 88 N.H. 17, 19 (1936). Unjust enrichment is not a boundless doctrine, but is, instead, "narrower, more predictable, and more objectively determined than the implications of the words 'unjust enrichment'." RESTATEMENT (THIRD) OF RESTITUTION AND UNJUST ENRICHMENT § 1 comment *b* at 2 (Discussion Draft, 2000).

■ One general limitation is that unjust enrichment shall not supplant the terms of an agreement. *See* 42 C.J.S. *Implied Contracts* § 38 (2007) ("[U]njust enrichment . . . is not a means for shifting the risk one has assumed under contract."). It is a well-established principle that the court

ordinarily cannot allow recovery under a theory of unjust enrichment where there is a valid, express contract covering the subject matter at hand. *See J.G.M.C.J. v. Sears, Roebuck & Company*, 391 F.3d 364, 369 (1st Cir. 2004) (applying New Hampshire law and rejecting claim of unjust enrichment where defendant "acted in full compliance with a valid, express contract" (citations omitted)); *Pella Windows and Doors v. Faraci*, 133 N.H. 585, 586 (1990) (holding that liability for unjust enrichment may accrue, "[w]here, as in the present case, no express contractual relationship exists between the parties"); RESTATEMENT OF RESTITUTION § 107(1) (1937) ("A person of full capacity . . . pursuant to a contract with another . . . is not entitled to compensation therefor other than in accordance with the terms of such bargain, unless the transaction is rescinded . . . or unless the other has failed to perform his part of the bargain."); RESTATEMENT (THIRD) OF RESTITUTION AND UNJUST ENRICHMENT § 2 comment *c* at 16 (Discussion Draft, 2000) ("Where a benefit is conferred within the framework of a valid and enforceable contract, the recipient's liability to make compensation is fixed exclusively by the contract."). Unjust enrichment may be available to contracting parties where the contract was breached, rescinded, or otherwise made invalid, or where the benefit received was outside the scope of the contract. *See* RESTATEMENT OF RESTITUTION § 107(1); RESTATEMENT (THIRD) OF RESTITUTION AND UNJUST ENRICHMENT § 2 comment *c* at 16. None of these elements is present here.

■■ Based upon the record before us, the general rule that unjust enrichment cannot coexist with a valid contract applies. The parties do not contest the validity of Clapp's employment contracts, and we assume that each contract was valid and fully enforceable. Nor is there any dispute about whether Clapp's retirement benefits are within the scope of her employment contracts. Clapp's non-NHRS retirement plan was a part of her employment contract. Moreover, "retirement and other related benefits . . . constitute a substantial part of an employee's compensation." *Belknap County*, 122 N.H. at 621; *see Howard Delivery Service, Inc. v. Zurich American Ins. Co.*, 547 U.S. 651, 654 (2006) ("[F]ringe benefits that complete a pay package . . . typically [include] pension plans, and group health, life, and disability insurance."). Clapp's unjust enrichment claim must therefore fail. *See Tolliver v. Christina School Dist.*, 564 F. Supp. 2d 312, 315 (D. Del. 2008) ("[T]he existence of an express, enforceable contract that controls the parties' relationship will defeat an unjust enrichment [claim]."). Clapp simply cannot sue for unjust enrichment and receive more than that to which she was contractually entitled.

■ Because the parties defined the employment relationship by contract, and because those contracts were valid and enforceable, covering the same

subject matter as Clapp's unjust enrichment claim, we hold that the trial court erred in allowing Clapp to recover damages under a theory of unjust enrichment.

*Reversed.*

BRODERICK, C.J., and DALIANIS and DUGGAN, JJ., concurred.