Ossipee District Court
No. 93-661

THOMAS KONDRAT

v.

FREEDOM SCHOOL BOARD

July 19, 1994

*Thomas Kondrat,* by brief and orally, *pro se.*

*Kidder & Burke,* of Laconia (*Bradley F. Kidder* on the brief and orally), for the defendant.

JOHNSON, J.   The plaintiff, Thomas Kondrat, appeals the decision of the Ossipee District Court (*Patten,* J.), dismissing his small claims complaint seeking an additional $850 for auditing services he performed for the Freedom School District. We reverse and remand.

On February 25, 1992, at a work session of the defendant Freedom School Board (board) at which Kondrat, a member of the board for the 1991–1992 school year, was not present, the following motion was made and seconded concerning a salary for the school auditor: "If an individual is elected to the position of school auditor, the line amount of $1,000.00 will drop back to $150.00." The abstract of the minutes of this meeting, which was sent to all board members, indicated no vote either way on the motion, but explained that "the intent of $1,000.00 was for a Certified Firm, because in the last three (3) years no one has run for auditor." Article III of the warrant sent to the district voters to notify them of the annual meeting listed the following three purposes for which the district was to vote to appropriate money: "for the support of schools, for the payment of salaries for school district officials and agents, and for the payment of the statutory obligations of the district." At the annual school district meeting of Freedom voters held on March 9, 1992, the voters were presented with a lump sum proposed budget of $1,268,402 for the fiscal year 1993, containing a line item "Audit Services, School Board" of $1,000. The proposed budget was reduced to a bottom line appropriation of $1,230,000, with no direction as to which line items would be diminished to conform to the reduced appropriation. The minutes of the March 9, 1992, meeting indicate "a strong recommendation that all staff salaries be frozen back to the 1991–92 salary," but no discussion about changing the salaries of the elected officials. Kondrat was elected to the position of auditor on March 10, 1992, and resigned from the board, as is required of an elected official, on April 12, 1992.

The board met on April 28, 1992, to modify the budget and revise line items to meet the reduced appropriation. At this time, the line item for audit services was changed from $1,000 to $150. Kondrat performed an audit and presented a bill for $1,000 to the school treasurer. Kondrat was paid $150 for his services.

Kondrat filed a small claims action seeking an additional $850. At the trial, the court did not allow Kondrat or the board to discuss the value of the audit or the services rendered. The court dismissed the complaint, finding "that the voters made no specific line item reduction, but rather a total amount reduction, leaving the areas to reduce to the School Board to meet the new bottom line." The court determined that the plaintiff had "no demonstrable vested interest in the amount of $1,000.00 originally proposed" by the board for audit services, "and [he] could not reasonably rely on this particular line item amount in asserting a contract basis for recovery." The court did not make any determination as to the value of the services performed by the plaintiff.

■■ On appeal, Kondrat first argues that pursuant to RSA 194:10 (1989), the school district, rather than the school board, has the authority to determine the elected auditor's salary at the school district's annual meeting. It is a familiar principle of school law that "school boards have only such authority as is expressly or impliedly granted by statute." *Ashley v. School Dist.*, 111 N.H. 54, 55, 274 A.2d 795, 797 (1971). RSA 194:10 states:

> **"Salaries of District Board and Officers.** At its annual meeting each school district shall determine the salaries of its school board and other district officers, and the district clerk shall certify the same to the selectmen."

Both parties and this court agree that the position of auditor is an officer of the school district, and the warrant announcing the annual elections sent to members of the school district indicated such. RSA 194:10, therefore, is applicable to this case. The plain language of the statute designates the "school district," *i.e.*, the voters, as the body responsible for determining the salary of the auditor, and the annual meeting as the proper time for making such determination. "As a first step in statutory construction, we examine the language found in the statute itself, and where possible, we ascribe the plain and ordinary meanings to words used." *Great Lakes Aircraft Co. v. City of Claremont*, 135 N.H. 270, 277, 608 A.2d 840, 845 (1992) (quotation and citations omitted). Thus, the board was not the proper body to set the amount of the auditor's salary.

Both parties conceded at oral argument that the school district had not actually appropriated a certain sum of money for Kondrat's audit services. It appears that the board made an oversight: At the board's meeting on February 25, 1992, a motion was made that the line amount of $1,000 be dropped back to $150, but the minutes of the meeting indicate that no vote was taken on the motion. At the annual district meeting on March 9, 1992, the voters of the school district had reason to believe that the line item "audit services" originally set at $1,000 was in fact the auditor's salary because the board did not change the form submitted to the voters or inform them that the auditor's salary had not been determined. Although the warrant sent to school district voters indicated that the voters had to appropriate money for three distinct school purposes, the voters decided upon a lump sum reduction that would affect all three purposes. Thus, the voters had no knowledge of the effect upon the salaries of officials specifically. RSA 194:10 requires that the school district voters determine the salaries of the district officers; thus, the amount of Kondrat's salary should have been put to a vote of the district.

■ The board relies upon *Ashley v. Rye School District*, concerning a school board's reallocation of funds within a valid appropriation for a specific purpose, to assert that it had authority to change the line items in the final budget. *See Ashley*, 111 N.H. at 56, 274 A.2d at 797. What distinguishes *Ashley* from the case at hand, however, is that in *Ashley* there was a transfer within the same appropriation which the district voted for school purposes. This transfer in *Ashley* was held to be authorized by the then-existing version of RSA 32:10 (Supp. 1970) (current version at RSA 32:10 (Supp. 1993)). *See id.* In this case, the action of the board in setting the auditor's salary was not authorized by the statute. The total budget was amended without a vote as to which line items would be reduced to meet the new amended budget.

We find no merit in the board's argument that since the salaries of officers of Freedom and other school districts have not been submitted to the voters for some time, the board was not legally obligated to submit the amount of the auditor's salary to a vote of the district. That the law has not been followed in the past does not excuse continued noncompliance. Therefore, we hold that the board had no authority to diminish the line item of audit services to conform with the reduced appropriation.

We find equally unconvincing the board's argument that the cost of petitioning the superior court for a special school district meeting to determine the school auditor's salary and the cost of holding such meeting outweighed the legal duty to comply with RSA 194:10. The law dictates that the voters are the proper authority for setting salaries, and therefore, such decisions may not be left to the discretion of the board.

Kondrat argued during oral argument that he is entitled to the fair value of his auditing services after proving the worth of his work. *Cf. Rindge v. Lamb*, 58 N.H. 278, 280 (1878) (where there is no contract, the selectmen can recover what their services are reasonably worth). He now makes no claim that he is entitled to $850. We hold that the district court erred in not allowing Kondrat to present evidence of the fair value of the services that he reasonably rendered the town, and that a determination by the court on the basis of *quantum meruit* is a just alternative in the absence of a contract that specifies an amount. *See Appeal of Milton School Dist.*, 137 N.H. 240, 248, 625 A.2d 1056, 1061 (1993).

■ The board's final argument is that Kondrat was on notice that his salary would be $150 before he actually performed his audit services, and therefore could have resigned from the office of auditor or

secured a warrant article. *See* RSA 197:6 (Supp. 1993). This argument is unavailing because even if it were proven that Kondrat was aware that the board had set his salary at $150, RSA 194:10 entitles Kondrat to a salary set by the district voters. That a salary had not been set by the school district was conceded by both parties at oral argument. Therefore, we remand to the district court for a resolution of what Kondrat's services were worth so that he may be afforded an equitable remedy.

*Reversed and remanded.*

All concurred.