Carroll
No. 95-817

JAMES J. KALLED

v.

PAMELA D. ALBEE

May 11, 1998

*Kalled Law Offices*, of Ossipee (*John P. Kalled* on the brief and orally), for the plaintiff.

*Anthony A. McManus*, of Dover, by brief and orally, for the defendant.

THAYER, J. This case involves the issue of whether an attorney may enforce a fee-sharing agreement in a contingent fee case where that attorney loses his license to practice law prior to entry of judgment in the case. We hold that, under these circumstances, an attorney may not enforce the agreement.

The defendant, Pamela D. Albee, worked for the plaintiff, James J. Kalled, in his law office as an associate attorney from 1983 to 1987. In 1987, Albee decided to leave Kalled's employ and begin her own law practice. Kalled notified clients that Albee was leaving the practice and gave them the choice of remaining with his firm or separately retaining Albee. Several clients chose to discharge Kalled and retain Albee, including Kenneth and Marguerite Dean (the Deans). In 1985, the Deans had hired Kalled to pursue a personal injury action, and Albee had been given primary responsibility for the case.

The controversy, in this matter, centers around the enforceability of a fee-sharing agreement Kalled gave Albee. The agreement states:

Upon resolution of each case, all outstanding costs will be reimbursed to the respective lawyers and the fees in each case shall be split fifty percent (50%) to James J. Kalled and fifty percent (50%) to Pamela D. Albee.

. . . .

In the event that any of the above cases need to be tried and . . . Albee requests . . . Kalled to aid in trying said lawsuit and . . . Kalled agrees to so try the case, regarding the above percentages in the division of the fees, Mr. Kalled's percentage goes up and Mrs. Albee's percentage goes down on a basis agreeable to the parties.

Although Attorney Albee never signed the agreement, she made payments to Kalled in accordance with it regarding other cases to which it pertained. The trial court found that Albee accepted the contract on its terms through her performance.

In 1994, the Deans settled their case, and Albee received a fee of approximately $60,000. Two years before the settlement in the Dean case, however, this court suspended Attorney Kalled from the practice of law. *See Kalled's Case*, 135 N.H. 557, 561, 607 A.2d 613, 616 (1992) (holding that Kalled could not practice law and must wait at least five years before petitioning for readmission). Thus, at the time of settlement in the Dean case, Kalled was not entitled to practice law in New Hampshire. Nonetheless, Kalled asserted a right to fifty percent of the fee pursuant to the agreement.

After a trial on the merits, the Superior Court (*Nadeau*, J.) found in favor of Kalled on the issue of whether he could enforce the agreement against Albee. This appeal followed.

On appeal, Albee contends that: (1) several Rules of Professional Conduct bar payment to Kalled, in part because the Rules of Professional Conduct indicate that the contract is against public policy; (2) Kalled did not complete his obligations under the contract prior to suspension and, therefore, may not collect the fee; and (3) Kalled may recover only under a theory of quantum meruit. We begin by addressing her argument regarding the interplay between the contract and the Rules of Professional Conduct.

■ The trial court found that Albee accepted the contract Kalled gave her by performance of its terms. A party may accept a contract by performance or conduct. *See Tsiatsios v. Tsiatsios*, 140 N.H. 173,

178, 663 A.2d 1335, 1339 (1995). The ultimate interpretation of a contract rests with this court as a matter of law, *see Baker v. McCarthy*, 122 N.H. 171, 174-75, 443 A.2d 138, 140 (1982).

■ Albee argues that the New Hampshire Rules of Professional Conduct prohibit her from sharing any of the fee with Kalled, in part because the rules indicate that the contract is contrary to New Hampshire public policy. The prefatory "Scope" of the rules begins, "The Rules of Professional Conduct are rules of reason. They should be interpreted with reference to the purposes of legal representation and of the law itself. . . . [They] presuppose a larger legal context shaping the lawyer's role." N.H. R. PROF. CONDUCT Scope. The rules inform this court as to the public policy of New Hampshire regarding the supervision of our bar. The administration of a professional and ethical bar ultimately falls to us. *See Petition of Tocci*, 137 N.H. 131, 135, 624 A.2d 548, 550 (1993). Our ultimate concern is the promotion of the public's confidence in the bar and the preservation of the integrity of the profession. *Kalled's Case*, 135 N.H. at 560, 607 A.2d at 616; *Harrington's Case*, 100 N.H. 243, 244, 123 A.2d 396, 396 (1956). The rules elucidate this general public policy.

■ The rules are not designed to provide a private cause of action. *See* N.H. R. PROF. CONDUCT Scope. "However, the disciplinary rules may be used to determine whether a contract violates public policy." *Bond v. Crill*, 906 S.W.2d 103, 106 (Tex. Ct. App. 1995); *see, e.g., Polland & Cook v. Lehmann*, 832 S.W.2d 729, 736 (Tex. Ct. App.), *writ denied* (Sept. 30, 1992).

We, therefore, utilize the rules as an instructive backdrop by which to analyze contracts involving attorneys. It is not a new proposition that courts will not uphold contracts contrary to public policy. *See Technical Aid Corp. v. Allen*, 134 N.H. 1, 17, 591 A.2d 262, 271 (1991); *see also Nashua &c. Paper Co. v. Noyes Co.*, 93 N.H. 348, 351, 41 A.2d 920, 922 (1945). *See generally* 17A AM. JUR. 2D *Contracts* § 257 (1991). Accordingly, "[i]f the contract has not been performed in accordance with the requisites set forth in the disciplinary rules, performance may be excused as against public policy." *Bond*, 906 S.W.2d at 106.

■ Attorney Albee contends that two rules, N.H. R. PROF. CONDUCT 1.5 and 5.4, preclude Kalled from collecting his fifty percent share of the fee in this matter. Rule 1.5(f) states in pertinent part:

> A division of fee between lawyers who are not in the same firm may be made only if: (1) the client consents to employment of the other lawyer after a full disclosure . . . (2) the division is made in reasonable proportion to the services performed or responsibility or risks assumed by each . . . .

The record reflects that the Deans did not give their informed consent to the fee-sharing arrangement between Kalled and Albee. "It is vital that the division of fee arrangement be fully disclosed to the client and that the client consent to the participation of both lawyers." N.H. R. PROF. CONDUCT 1.5 ABA model code comments. Failure to obtain a client's informed consent constitutes a breach of fiduciary duty and a violation of public policy; such contracts are invalid. *See Schniederjon v. Krupa*, 514 N.E.2d 1200, 1202 (Ill. App. Ct. 1987), *appeal denied*, 520 N.E.2d 393 (Ill. 1988) (holding that public policy requires a fee-sharing agreement, not specifically and completely disclosed to client, be unenforceable). The requirement of full disclosure serves to protect the client by putting him on notice of his attorney's financial interest in the case. *See Schniederjon*, 514 N.E.2d at 1202.

We also note that, at least from the time of Kalled's suspension, he could not have had *any* responsibility or risk assumed for the case. *See* N.H. R. PROF. CONDUCT 1.5(f)(2). As such, the rules disapprove of that arrangement.

■ The contract given Albee by Kalled falls well short of the ethical standards set forth in the rules. It violates Rule 1.5(f)(1). We hold it contrary to public policy and, thus, void. *See Bond*, 906 S.W.2d at 106; *Stefanich, McGarry v. Hoeflich*, 632 N.E.2d 1064, 1068 (Ill. App. Ct. 1994); *Polland & Cook*, 832 S.W.2d at 736; *Schniederjon*, 514 N.E.2d at 1202; *Proctor v. Louisville & N. R. Co.*, 233 S.W. 736, 740 (Ky. Ct. App. 1921).

■ Because Attorney Albee takes the position in her brief that Kalled is not entitled to the contract amount, but *deserves* compensation in the form of quantum meruit, and the clients are not parties to the action, we need not discuss the merits of applying this remedy to the instant case. We recognize that other jurisdictions diverge on the question of whether to award quantum meruit to a suspended or disbarred attorney in similar situations. *See Fletcher v. Krise*, 120 F.2d 809, 812 (D.C. Cir.), *cert. denied*, 314 U.S. 608 (1941) (disallowing all recovery including quantum meruit); *Greenberg v. Cohn*, 582 N.Y.S.2d 597, 602 (Sup. Ct. 1992) (allowing quantum meruit);

*Royden v. Ardoin*, 331 S.W.2d 206, 209 (Tex. 1960) (disallowing quantum meruit in contingent fee case); *Kimmie v. Terminal R.R. Ass'n of St. Louis*, 126 S.W.2d 1197, 1201 (Mo. 1939) (disallowing all recovery); *Davenport v. Waggoner*, 207 N.W. 972, 974 (S.D. 1926) (disallowing quantum meruit). Because Albee pleads that Kalled is entitled to fees based on quantum meruit, we remand to the superior court for a determination of Kalled's quantum meruit share of the fee. The court should apply traditional notions of quantum meruit doctrine in order to determine the legal fee to which Kalled is entitled based on his *actual* work done prior to suspension. We express no opinion as to the future application of the doctrine in determining the appropriate remedy for a suspended or disbarred attorney in similar circumstances.

Having ruled in favor of the appellant by nullifying the contract on public policy grounds and granting the remedy she seeks, we need not address her remaining arguments. *Cf. Snow v. American Morgan Horse Assoc.*, 141 N.H. 467, 472, 686 A.2d 1168, 1172 (1996).

*Reversed and remanded.*

BRODERICK, J., did not sit; the others concurred.