Elizabeth M. TAMPOSI, Plaintiff,

v.

Stephanie DENBY, Esq., Burke Warren MacKay & Serritella, P.C., Michael Weisman, Esq., Rebecca McIntyre, Esq., Weisman & McIntyre, P.C., Julie Shelton, Esq., individually and in her capacities as Trustee of the Elizabeth M. Tamposi GST Exempt Trust and the Elizabeth M. Tamposi Trust, both created under the Samuel A. Tamposi Sr. 1992 Trust, and in her capacity as Trustee of the Elizabeth A. Tamposi Trust, created under the Samuel A. Tamposi Sr. 1994 Irrevocable Trust; Butler, Rubin Saltarelli & Boyd, LLP, Baker & Daniels, LLP, Defendants.

Civil Action No. 10–12283–RBC.[1]

United States District Court,
D. Massachusetts.

Sept. 30, 2013.

---

1. On March 8, 2011, the parties consented to this Court's jurisdiction for all purposes, in-

cluding trial and the entry of judgment, pursuant to 28 U.S.C. § 636(c).

Charles P. Kazarian, Christopher S. Malloy, Law Office of Charles P. Kazarian, Boston, MA, for Plaintiff.

Susan E. Cohen, George A. Berman, Sarah–Elizabeth Cloutier, Timothy M. Pomarole, Peabody & Arnold LLP, Camille F. Sarrouf, Sarrouf Law, LLP, Joan A. Lukey, Matthew L. McGinnis, Ropes & Gray, Michael R. Dube, Robert M. Buchanan, Jr., Choate, Hall & Stewart, Boston, MA, David A. Axelrod, Robert A. Cohen, David A. Axelrod & Associates P.C., Chicago, IL, for Defendants.

MEMORANDUM AND ORDER ON
MOTION TO DISMISS COUNT I
THROUGH IV AND IX OF PLAIN-
TIFF'S VERIFIED COMPLAINT
OF DEFENDANTS STEPHANIE
DENBY, ESQ., AND BURKE WAR-
REN McKAY & SERRITELLA,
P.C. (# 50)

COLLINGS, United States Magistrate
Judge.

## I. Introduction

This matter is before the Court on a
motion to dismiss Counts I, II, III, IV, and
IX[2] of the verified complaint by defen-
dants Stephanie Denby, Esq. ("Attorney
Denby") and Burke Warren MacKay &
Serritella, P.C. ("Burke Warren"). The
complaint was filed by plaintiff Elizabeth
M. "Betty" Tamposi ("Ms. Tamposi") to
recover damages allegedly caused by the
defendants' legal malpractice. Jurisdiction
is based on diversity, and New Hampshire
law is applicable.[3]

---

**2.** The counts in the verified complaint are
erroneously numbered. There are ten counts
in total.

**3.** In their memoranda, the parties appear to
agree that New Hampshire substantive law is
controlling. Consequently, no further discus-
sion with regard to the applicable law is war-
ranted. *Lluberes v. Uncommon Prods., LLC,*
663 F.3d 6, 23 (1st Cir.2011) ("When the
parties agree on the substantive law that
should govern, 'we may hold the parties to
their plausible choice of law, whether or not
that choice is correct.' ") (quoting *Perry v.
Blum,* 629 F.3d 1, 8 (1st Cir.2010)).

**4.** The First Circuit has recognized that "[u]n-
der certain narrow exceptions, some extrinsic
documents may be considered without con-
verting a motion to dismiss into a motion for
summary judgment. These exceptions in-
clude documents the authenticity of which are
not disputed by the parties; ... official public
records; ... documents central to plaintiffs'
claim; [and] ... documents sufficiently re-
ferred to in the complaint." *Freeman v. Town*

## II. Factual Background

This brief factual recitation is gleaned
from the allegations of the verified com-
plaint and a 2010 decision of the New
Hampshire Hillsborough County Superior
Court (herein "the New Hampshire Ac-
tion"), i.e., *Shelton v. Tamposi,* 2010
N.H.Super. LEXIS 78 (N.H.Sup.Ct.2010),
*aff'd in part and remanded,* 164 N.H. 490,
62 A.3d 741 (2013).[4]

Samuel A. Tamposi ("Sam, Sr."), a suc-
cessful real estate developer based out of
New Hampshire, established a number of
trusts to pass on his substantial wealth to
his six children and their issue.[5] (# 1 ¶ 13)
The joint assets of the trusts were placed
in the hands of two of Sam, Sr.'s sons,
Sam, Jr. and Stephen, who were explicitly
named "investment directors" and empow-
ered to make all decisions as to invest-
ments, purchases, and sales of assets. (# 1
¶ 15) A trustee was named to handle a
number of other duties, including issuing
disbursements to beneficiaries. (# 1 ¶ 15)

---

*of Hudson,* 714 F.3d 29, 36 (1st Cir.2013)
(internal citations and quotation marks omit-
ted); *see also United Auto., Aerospace, Agr.
Implement Workers of America Intern. Union
v. Fortuno,* 633 F.3d 37, 39 (1st Cir.2011);
*Trans–Spec Truck Service, Inc. v. Caterpillar
Inc.,* 524 F.3d 315, 321 (1st Cir.), *cert. denied,*
555 U.S. 995, 129 S.Ct. 500, 172 L.Ed.2d 359
(2008). The plaintiff has quoted extensively
from the decision in the New Hampshire Ac-
tion and, indeed, it lies at the heart of Ms.
Tamposi's claims.

**5.** Each of Sam, Sr.'s children and any issue
born within their lifetime were named the
beneficiary of two trusts, one of which con-
sisted of assets subject to the "generation
skipping" tax exemption ("GST Exempt
Trust"), and the other which was not subject
to the exemption ("Non-exempt Trust"). (# 1
¶ 14) Therefore, there were twelve trusts cre-
ated in total, and Ms. Tamposi was named
beneficiary of two of them. (# 1 ¶ 14)

Sam, Sr. placed within the trust documents an *in terrorem* clause, also known as a "no contest" clause. (# 1 ¶ 16) The clause stated that if a beneficiary initiated litigation to alter or invalidate provisions of the trust, he or she automatically forfeited all interest in the assets, and must return all funds received since the litigation was filed. (# 1 ¶ 16) It explicitly exempted suits to enforce the trustee's duties from this penalty. (# 1 ¶ 16) The plaintiff was aware of the *in terrorem* clause in the trust documents. (# 1 ¶¶ 26, 35)

Ms. Tamposi, one of Samuel's children and the plaintiff in this case, sought to gain more direct control over the trust assets of which she was a beneficiary. (# 1 ¶ 18) As the result of a 2006 settlement among the siblings, Ms. Tamposi was given the right to obtain a trustee of her own choosing for the two trusts of which she and her issue were beneficiaries, while the assets remained under the control of the investment directors. (# 1 ¶ 18)

Initially, Ms. Tamposi asked her attorney and friend, Julie Shelton ("Attorney Shelton"), to act as trustee, but Attorney Shelton declined, and instead recommended Attorney Denby, a partner at Burke Warren. (# 1 ¶¶ 19–20) Allegedly, Attorney Denby proposed an alternative plan in which Attorney Shelton would act as trustee, but Attorney Denby would in fact make the decisions and represent her in court regarding issues surrounding the trust. (# 1 ¶¶ 22–23)

Attorney Shelton, presumably under Attorney Denby's direction, took a number of actions, including working with Ms. Tamposi to interview attorneys for any potential trust litigation, demanding a payment of "$2,000,000 within 7 days" for Ms. Tamposi's "immediate cash needs" from the investment directors, demanding that the trust's assets in the Boston Red Sox base-

ball club "be sold with the resulting cash distributed immediately," and eventually initiating the New Hampshire Action alleging a breach of fiduciary duty by the investment directors and demanding that her share of the assets be sold. (# 1 ¶¶ 25–27, 30); *Shelton v. Tamposi*, 2010 N.H.Super. LEXIS 78, at *21.

That suit was ultimately unsuccessful, and the New Hampshire Hillsborough County Superior Court ruled that the action violated the in terrorem clause. (# 1 ¶¶ 36, 41) As a result, Ms. Tamposi forfeited her interest in the trusts and was required to reimburse the trust for any money dispersed to her after the suit was initiated. (# 1 ¶ 41) Additionally, she was required to pay the investment directors' attorneys' fees, as well as her own. (# 1 ¶ 41); *Shelton v. Tamposi*, 2010 N.H.Super. LEXIS 78, at **80–81.

Ms. Tamposi now brings suit against Attorney Shelton, Attorney Denby and Burke Warren as well as other attorneys who advised her in the New Hampshire action, alleging that their misconduct led to the forfeiture of her interest in the trust assets.

### III. *Standard of Review*

A Rule 12(b)(6) motion to dismiss challenges a party's complaint for failing to state a claim. In deciding such a motion, a court must " 'accept as true all well-pleaded facts set forth in the complaint and draw all reasonable inferences therefrom in the pleader's favor.' " *Haley v. City of Boston*, 657 F.3d 39, 46 (1st Cir.2011) (quoting *Artuso v. Vertex Pharm., Inc.*, 637 F.3d 1, 5 (1st Cir.2011)). When considering a motion to dismiss, a court "may augment these facts and inferences with data points gleaned from documents incorporated by reference into the complaint, matters of public record, and facts susceptible to judicial notice." *Haley*, 657 F.3d

at 46 (citing *In re Colonial Mortg. Bankers Corp.*, 324 F.3d 12, 15 (1st Cir.2003)).

In order to survive a motion to dismiss under Rule 12(b)(6), the plaintiff must provide "enough facts to state a claim to relief that is plausible on its face." *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). The "obligation to provide the grounds of [the plaintiff's] entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555, 127 S.Ct. 1955 (quotation marks and alteration omitted). The "[f]actual allegations must be enough to raise a right to relief above the speculative level," and to cross the "line from conceivable to plausible." *Id.* at 555, 570, 127 S.Ct. 1955.

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (citing *Twombly*, 550 U.S. at 556, 127 S.Ct. 1955). However, the court is " 'not bound to accept as true a legal conclusion couched as a factual allegation.' " *Id.* at 678, 129 S.Ct. 1937(quoting *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955). Simply, the court should assume that well-pleaded facts are genuine and then determine whether such facts state a plausible claim for relief. *Id.* at 679, 129 S.Ct. 1937.

### IV. Discussion

#### A. In Pari Delicto

 As a preliminary matter, Attorney Denby and Burke Warren argue that Ms. Tamposi cannot recover damages in this lawsuit under the doctrine of *in pari delicto*. This doctrine, *in pari delicto potior est conditio defendentis*,[6] is an "ill-defined group of doctrines that prevents courts from finding for a plaintiff equally at fault as the defendant." *Official Comm. of Unsecured Creditors of Allegheny Health, Education and Research Foundation v. PricewaterhouseCoopers, LLP*, 607 F.3d 346, 350 n. 2 (3d Cir.2010); *see also Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 306–07, 105 S.Ct. 2622, 86 L.Ed.2d 215 (1985). "New Hampshire has recognized the *in pari delicto* doctrine." *In re Felt Mfg. Co., Inc.*, 371 B.R. 589, 609 (Bkrtcy.D.N.H.2007) (*citing Witte v. Desmarais*, 136 N.H. 178, 187, 614 A.2d 116, 120 (1992) and *Belisle v. Belisle*, 88 N.H. 459, 461, 191 A. 273, 274 (1937)).

 *In pari delicto* is an affirmative defense to the plaintiff's claims. *Gray v. Evercore Restructuring L.L.C.*, 544 F.3d 320, 324 (1st Cir.2008). "Where a court grants a Rule 12(b)(6) or Rule 12(c) motion based on an affirmative defense, the facts establishing that defense must: (1) be 'definitively ascertainable from the complaint and other allowable sources of information,' and (2) 'suffice to establish the affirmative defense with certitude.' *Nisselson v. Lernout*, 469 F.3d 143, 150 (1st Cir. 2006)." *Gray*, 544 F.3d at 324.

 Addressing the doctrine of *in pari delicto*, the First Circuit has noted that

The defense has two components. It applies where (i) the plaintiff, as compared to the defendant, bears at least substantially equal responsibility for the wrong he seeks to address and (ii) preclusion of the suit would not interfere with the purposes of the underlying law or otherwise contravene the public interest. We refer to these parts as the

---

**6.** The Latin translates to: "In a case of equal or mutual fault ... the position of the [defending] party ... is the better one." *Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 306, 105 S.Ct. 2622, 86 L.Ed.2d 215 (1985) (footnote omitted).

'responsibility' and 'public policy' components.

*Gray,* 544 F.3d at 324 (internal citation and quotation marks omitted). As explained by the Supreme Court:

In its classic formulation, the *in pari delicto* defense was narrowly limited to situations where the plaintiff truly bore at least substantially equal responsibility for his injury, because 'in cases where both parties are in delicto, concurring in an illegal act, it does not always follow that they stand in pari delicto; for there may be, and often are, very different degrees in their guilt.' 1 J. Story, Equity Jurisprudence 304–305 (13th ed. 1886) (Story). Thus there might be an 'inequality of condition' between the parties, *id.,* at 305, or 'a confidential relationship between th[em]' that determined their 'relative standing' before a court, 3 J. Pomeroy, Equity Jurisprudence § 942a, p. 741 (5th ed. 1941) (Pomeroy). In addition, the public policy considerations that undergirded the in pari delicto defense were frequently construed as precluding the defense even where the plaintiff bore substantial fault for his injury: '[T]here may be on the part of the court itself a necessity of supporting the public interests or public policy in many cases, however reprehensible the acts of the parties may be.' 1 Story 305. Notwithstanding these traditional limitations, many courts have given the *in pari delicto* defense a broad application to bar actions where plaintiffs simply have been involved generally in 'the same sort of wrongdoing' as defendants.

*Bateman Eichler,* 472 U.S. at 306–307, 105 S.Ct. 2622 (citation omitted).

In the New Hampshire Action, Judge Cassavechia made findings with respect to Ms. Tamposi and Attorney Shelton. To date, Attorney Denby's conduct has yet to be examined because there has been no occasion for questions about her conduct to have been raised in any of the prior proceedings. In the verified complaint, Ms. Tamposi essentially alleges that Attorney Denby was the architect of the plan "whereby she (Denby) would act as de-facto Trustee while [Attorney] Shelton would nominally fill that role." (# 1 ¶ 22) Attorney Denby and Burke Warren are said to have "embarked on an irreconcilable course of conflicted interests in simultaneously representing [Ms. Tamposi] and [Attorney] Shelton." (# 1 ¶ 25) The defendants "rendered no competent advice to [Ms. Tamposi] as to the risks and benefits of going forward" (# 1 ¶ 27), but rather pressed on to bring the New Hampshire Action. Attorney Denby is allegedly the person who "laid the groundwork for the litigation." (# 1 ¶ 30)

█ It is true that Judge Cassavechia found that Ms. Tamposi was aware of the *in terrorem* clause and that, in light of prior litigation,[7] knew that she risked forfeiture of her interest in the trusts by proceeding with litigation. While Ms. Tamposi may, in a general sense, have understood that she risked forfeiture, she alleges that Attorney Denby represented to her "that because [Attorney Denby and Burke Warren] would set up the litigation in the overall form of breach of fiduciary duty actions, [Ms. Tamposi] faced only a minuscule risk of being found in violation

---

**7.** In a prior declaratory judgment action in 2000, a judge "ruled that so long as [Ms. Tamposi, her sibling and their children] did not attempt to challenge the validity of the trust or the authenticity of documents, but sought only to uphold fiduciary standards under the trust and New Hampshire law, there would be no violation" of the *in terrorem* clause. *Shelton v. Tamposi,* 2010 N.H.Super. LEXIS 78, at *11.

of the *in terrorem* clause." (# 1 ¶ 26) Moreover, a finding of "bad faith" made in the context of awarding attorneys' fees [8] alone does not foreclose inquiry into other issues relevant on a legal malpractice claim, such as what advice, warnings, and representations were made by the attorney to the client. How Attorney Denby's conduct as alleged in the verified complaint weighs against Ms. Tamposi's conduct in determining the "responsibility" component of the *in pari delecto* doctrine is unknown at this juncture. Since facts concerning the *in pari delecto* defense have not been established with certitude, the motion to dismiss on this basis must be denied.

■■■ Attorney Denby and Burke Warren contend since Ms. Tamposi knew of the risk involved with respect to the *in terrorem* clause and she acted in bad faith,[9] the plaintiff is collaterally estopped from bringing a malpractice claim against them. Under New Hampshire law, " '[f]or collateral estoppel to apply, three basic conditions must be satisfied: (1) the issue subject to estoppel must be identical in each action; (2) the first action must have resolved the issue finally on the merits; and (3) the party to be estopped must have appeared as a party in the first action, or have been in privity with someone who did so.' " *Ojo v. Lorenzo*, 164 N.H. 717, 725, 64 A.3d 974, 981 (2013) (quoting *Stewart v. Bader*, 154 N.H. 75, 80–81, 907 A.2d 931, 937 (2006)). Here, again, the full extent of Ms. Tamposi's appreciation of the risks involved in litigation must be examined in light of Attorney Denby's alleged advice, representations and conduct. So, too, whether Attorney Denby or Burke Warren were participants in Ms. Tamposi's bad faith conduct and whether they "bear[ ] at least substantially equal responsibility" cannot be determined based on the allegations of the verified complaint "and other allowable sources of information" such as Judge Cassavechia's decision in the New Hampshire Action. In short, the verified complaint will not be dismissed on the grounds of collateral estoppel.

### B. *The Verified Complaint*

#### i. *Count I—Legal Malpractice*

In Count I of the complaint it is alleged that Attorney Denby and Burke Warren committed legal malpractice by pursuing the New Hampshire Action which ultimately led to the forfeiture of Ms. Tamposi's interest in the trusts.

■■ Under New Hampshire law, there are three elements to a legal malpractice claim: "(1) that an attorney-client relationship existed, which placed a duty upon the attorney to exercise reasonable professional care, skill and knowledge in providing

---

**8.** In the New Hampshire Action, Judge Cassavechia explored the issue of bad faith to determine whether "justice and equity" required Ms. Tamposi to pay attorneys' fees and costs, ultimately finding that it did. *See* # 51, Exh. C and N.H.Rev.Stat. § 564–B:10–1004.

**9.** This finding does not necessarily equate to the wrongful act required by the *in pari delicto* doctrine, and therefore the issue may not identical. Although there are no formal rules, a wrongful act under this doctrine is generally required to be "immoral" or "illegal." *Evans v. Cameron*, 121 Wis.2d 421, 427, 360 N.W.2d 25, 28 (1985); *see, e.g., Grassmueck v. Am. Shorthorn Ass'n*, 402 F.3d 833 (8th Cir.2005) (bankruptcy trustee barred from bringing negligence claims against parties facilitating debtor's fraudulent investments); *Teneyck, Inc. v. Rosenberg*, 39 Misc.3d 194, 957 N.Y.S.2d 845 (N.Y.Sup.Ct.2013) (employer could not recover from employee for breaching fiduciary duty by engaging in bribery when employer had been criminally convicted for same act); *Pantely v. Garris, Garris & Garris, P.C.*, 180 Mich.App. 768, 447 N.W.2d 864 (1989) (client committed perjury on advice of attorney and could not recover in malpractice claim).

legal services to that client; (2) a breach of that duty; and (3) resultant harm legally caused by that breach." *Estate of Sicotte v. Lubin & Meyer, P.C.,* 157 N.H. 670, 674, 959 A.2d 236, 240 (2008) (quoting *Carbone v. Tierney,* 151 N.H. 521, 527, 864 A.2d 308, 314 (2004)). Here, there is no dispute that a duty existed between Attorney Denby, Burke Warren, and Ms. Tamposi by virtue of their attorney-client relationship. Attorney Denby and Burke Warren had agreed to represent Ms. Tamposi and Attorney Shelton in matters related to administration of the trusts. (# 1, Exh. A) As such, at a minimum the standard duty of care applies, and Denby and Burke Warren were required "to exercise reasonable professional care, skill and knowledge in providing services" to Ms. Tamposi. *Carbone,* 151 N.H. at 527, 864 A.2d at 314.

Ms. Tamposi contends that Attorney Denby and Burke Warren breached their duty to her by failing to exercise reasonable care and ordinary skill and knowledge in their representation. Ms. Tamposi points to the initiation of the New Hampshire Action, and alleges that the defendants knew it had high stakes and a low chance of success, factors about which she was not fully advised. (# 1 ¶ 37) To the contrary, according to Ms. Tamposi, Attorney Denby represented that the plaintiff "faced only a minuscule risk of being found in violation of the *in terrorem* clause." (# 1 ¶ 26) Ms. Tamposi contends that

> Denby and Burke Warren immediately embarked on an irreconcilable course of conflicted interests in simultaneously

representing [Ms. Tamposi] and Shelton, who had differing and conflicting legal interests, and they fomented litigation by Shelton and [Ms. Tamposi] (the Suffolk Action and the New Hampshire Action) that was doomed to complete failure from the outset without the required thorough analysis of the legal positions of the parties, the risks and benefits of going forward with such a course of action, and without rendering careful explanation to [Ms. Tamposi] of such legal positions, risks and benefits.

# 1 ¶ 25.

Judge Cassavechia, the presiding judge of the New Hampshire Action, found that the suit was brought in bad faith. *Shelton v. Tamposi,* 2010 N.H.Super. LEXIS 78, at **69–70. Moreover, he found that alternatives to the lawsuit existed, pointing out that "[h]ad the petitioners sincerely believed that the trustee had power to require liquidation of trust assets and demand distributions, they would have petitioned the court for instructions pursuant to RSA 564–B:2–201(c)." *Shelton v. Tamposi,* 2010 N.H.Super. LEXIS 78, at *73.

■ The defendants argue that Ms. Tamposi had knowledge of the *in terrorem* clause and its implications, yet still elected to pursue litigation. Judge Cassavechia's decision supports this contention.[10] While this may be true, the extent of her knowledge and her role in encouraging continued litigation were not discussed in the decision, nor is it clear from the allegations

---

10. The defendants point to the New Hampshire Action in which Judge Cassavechia found that Ms. Tamposi "specifically knew of her risk of forfeiture in filing [the New Hampshire Action], given the prior litigation and the earlier order on 'Petitioner's Motion for Partial Summary Judgment on Applicability of *In Terrorem* Clause.'" *Shelton v. Tamposi,* 2010 N.H.Super. LEXIS 78, at *75. In light of this finding, the defendants contend that this issue is precluded from further litigation in this case. The argument is unavailing. That Ms. Tamposi knew of her potential risk of forfeiture consequent to the *in terrorem* clause does not mean that she has not stated a claim given her allegations that the defendants downplayed the risk involved and failed fully to apprise themselves of New Hampshire law and its implications prior to instituting suit.

of the instant complaint. Taking the facts pleaded in the light most favorable to the plaintiff, the claim is that Attorney Denby and Burke Warren actively encouraged the filing and prosecution of the New Hampshire Action which led to the harm Ms. Tamposi suffered without fully researching the law or fully advising the plaintiff of the realistic risks.

Finally, Ms. Tamposi contends that this breach of the duty was the cause of the harm—that is, by recklessly pursuing the New Hampshire Action, Attorney Denby and Burke Warren triggered the *in terrorem* clause resulting in the forfeiture of Ms. Tamposi's beneficial interests under the trusts. Again, taken in the light most favorable to the plaintiff, sufficient facts have been pled to state a claim that Attorney Denby and Burke Warren breached their duty by pursuing a doomed lawsuit which caused Ms. Tamposi's damage.

For the reasons stated, the motion to dismiss Count I shall be denied.

### ii. Count II—Legal Malpractice (Heightened Standard)

In Count II Ms. Tamposi alleges that the defendants were subject to a heightened standard of legal malpractice by virtue of their representations that they were specialists in this particular area of law. The parties acknowledge that New Hampshire courts have not expressly addressed the issue of whether a heightened standard of care exists for "specialists" in a profession. The entirety of Ms. Tamposi's argument in her brief in support of this claim is as follows:

> In Massachusetts, a higher standard of care applies if the attorney has held herself out as adhering to such a standard. See, *Fishman v. Brooks*, 396 Mass. 643 [487 N.E.2d 1377] (1985). It is predictable that upon proper proofs,

the New Hampshire Supreme Court would follow suit.

# 58 at 11.

■ In the reference to the applicable standard of care, the Massachusetts Supreme Judicial Court in *Fishman* wrote that "[a]n attorney who has not held himself out as a specialist owes his client a duty to exercise the degree of care and skill of an average qualified practitioner." *Fishman v. Brooks*, 396 Mass. 643, 646, 487 N.E.2d 1377, 1379 (1986). Presumably, from the plaintiff's perspective, the inference to be drawn from this one sentence is that an attorney who *does* hold herself out as a specialist has a duty to exercise the degree of care and skill of the average qualified practitioner *practicing the specialty*, similar to the standard used in medical malpractice cases. *See, e.g., Palandjian v. Foster*, 446 Mass. 100, 104, 842 N.E.2d 916, 920 (2006) ("The proper standard is whether the physician, if a general practitioner, has exercised the degree of care and skill of the average qualified practitioner, taking into account the advances in the profession. . . . [A] specialist should be held to the standard of care and skill of the average member of the profession practising [practicing] the specialty, taking into account the advances in the profession.") (citing *Brune v. Belinkoff*, 354 Mass. 102, 109, 235 N.E.2d 793, 798 (1968)).

■ Whether the medical malpractice paradigm is to be followed in the legal malpractice context need not be determined at this time. A so-called heightened standard of legal malpractice simply is not a separate cause of action. As recently explained by the Supreme Court of New Hampshire:

> We have defined the term 'cause of action' as 'the right to recover, regardless of the theory of recovery.' *McNair v. McNair*, 151 N.H. 343, 353, 856 A.2d 5

(2004) (quotations omitted). It 'refers to all theories on which relief could be claimed on the basis of the factual transaction in question.' *Aubert v. Aubert*, 129 N.H. 422, 426, 529 A.2d 909 (1987) (quotation and brackets omitted). *Appeal of Morrissey*, 165 N.H. 87, 70 A.3d 465, 470 (2013).

The point to be made is that the plaintiff has one malpractice claim, whatever standard is determined to be applicable. Count II is duplicative of Count I and so shall be dismissed.

### iii. Count III—Aiding and Abetting Breach of Fiduciary Duty

Ms. Tamposi alleges that the defendants aided and abetted in the breach of a fiduciary duty by Attorney Shelton in her role as trustee. The New Hampshire Supreme Court has not yet recognized aiding and abetting as an independent cause of action. However, as explained by the First Circuit, a magistrate judge in the federal court in New Hampshire has determined that New Hampshire would recognize such a claim:

> It is undisputed that, as the magistrate judge found, the New Hampshire Supreme Court has yet to expressly consider whether to adopt the tort of aiding and abetting a breach of fiduciary duty. It was therefore the magistrate judge's duty to determine whether New Hampshire's Supreme Court would recognize the tort and how that Court would define the elements of the cause of action. *See Moores* [*v. Greenberg*], 834 F.2d [1105] at 1107 [ (1st Cir.1987) ]. The magistrate judge, in a ruling that has not been appealed, concluded that the New Hampshire Supreme Court would recognize the tort, and would adopt a version incorporating the principles of aiding and abetting liability set forth in the *Restatement (Second) of Torts. See*

*Restatement* § 876(b) ("For harm resulting to a third person from the tortious conduct of another, one is subject to liability if he ... knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself...."). Following other jurisdictions relying on these principles, he held that the tort would require [plaintiff] to prove three elements: (1) a breach of fiduciary obligations by [plaintiff's joint venture partner]; (2) knowing inducement or participation in the breach by the [defendant]; and (3) damages to [plaintiff] as a result of the breach. *E.g., S & K Sales Co. v. Nike, Inc.*, 816 F.2d 843, 847–48 (2d Cir.1987) (applying New York law); *Spinner v. Nutt*, 417 Mass. 549, 631 N.E.2d 542, 546 (1994).

*Invest Almaz v. Temple–Inland Forest Products Corp.*, 243 F.3d 57, 82–83 (1st Cir.2001).

The allegations of the verified complaint track the three essential elements of an aiding and abetting claim: First, Attorney Shelton, as trustee, breached her fiduciary duty to the trust beneficiaries (# 1 ¶ 53), more specifically, Attorney Shelton, as trustee, is alleged to have breached her fiduciary duty by, among other acts, instituting the litigation that ultimately led to the forfeiture of the plaintiff's interest in the trusts. Secondly, Attorney Denby and Burke Warren are alleged to have "vicariously, knowingly and substantially rendered assistance to [Attorney] Shelton in the commission of her breach of fiduciary duties" (# 1 ¶ 54), to wit, Attorney Denby and Burke Warren allegedly were aware that Attorney Shelton was breaching her fiduciary duties by instituting the subject lawsuit, but directly participated by preparing for and supporting the New Hampshire Action. Lastly, Ms. Tamposi "suffered damages as a prox-

imate result of the aiding and abetting by Denby and Burke Warren of [Attorney] Shelton's breaches of fiduciary duty" (# 1 ¶ 55) by, *inter alia*, having to forfeit of her interest in the trusts.

Given that a legal foundation exists for an aiding and abetting claim and, taken in the light most favorable to the plaintiff, the allegations of the complaint are sufficient to make out such a claim, the motion to dismiss Count III shall be denied.[11]

### iv. Count IV—Conflict of Interest

In Count IV, the plaintiff alleges that in simultaneously representing both the trustee, Attorney Shelton, and the beneficiary of the trusts, Ms. Tamposi, Attorney Denby and Burke Warren provided the plaintiff "only with conflicted legal advice and services, and denied [the plaintiff] the opportunity to have independent, sound legal advice." [12] (# 1 ¶ 58) As a result of this conflict of interest, Ms. Tamposi claims to have suffered damages.

The plaintiff has cited no case law to support the conclusion that the existence of a conflict of interest is grounds for an independent cause of action under the laws of New Hampshire. From all that appears, a proven conflict of interest establishes professional misconduct in violation of the Rules of Professional Conduct. *See, e.g., Case of Boyle,* 136 N.H. 21, 22, 611 A.2d 618, 618 (1992). The New Hampshire Supreme Court has held that "[t]he Conduct Rules ... were designed to provide guidance to lawyers and ... a structure for regulating conduct through disciplinary agencies ... [,] not ... [as] a basis for civil liability." *In re Wyatt's Case,* 159 N.H. 285, 299, 982 A.2d 396, 408 (2009) (internal citation and quotation marks omitted); *Copp v. Atwood,* 2005 WL 139180, *6 (D.N.H., Jan. 24, 2005) ("The 'Scope' section of the Rules of Professional Conduct, however, cautions that violation of a rule should not provide a cause of action and that the rules are not designed

---

**11.** Although the defendants rely on the case of *Spinner v. Nutt,* 417 Mass. 549, 551–552, 631 N.E.2d 542, 544–545 (1994) for the proposition that "most states (including Massachusetts) have rejected the concept [of an aiding and abetting breach of fiduciary duty claim] because a trust's attorney owes no duty to the beneficiary" (# 51 at 17), they appear to have misread that decision. The Massachusetts Supreme Judicial Court did not reject the legal viability of an aiding and abetting breach of a fiduciary duty claim, but rather determined only that the plaintiffs' allegations were insufficient to state a claim:

> The plaintiffs assert that the trustees breached their fiduciary duties to the beneficiaries and because the defendants knew of the breach and failed firmly to advise the trustees as to how best to protect the trust's assets, the defendants aided and abetted the trustees' breach. This argument also must fail. Although liability arises when a person participates in a fiduciary's breach of duty, *Augat, Inc. v. Aegis, Inc.,* 409 Mass. 165, 172, 565 N.E.2d 415 (1991), the plaintiff must show that the defendant knew of the breach

and actively participated in it such that he or she could not reasonably be held to have acted in good faith. *Banks v. Everett Nat'l Bank,* 305 Mass. 178, 182, 25 N.E.2d 177 (1940). An allegation that the trustees acted under the legal advice of the defendants, without more, is insufficient to give rise to a claim that an attorney is responsible to third persons for the fraudulent acts of his clients. *Andrews v. Tuttle—Smith Co.,* 191 Mass. 461, 468, 78 N.E. 99 (1906). The plaintiffs have failed to set forth sufficient allegations to support that the defendants actively participated in a breach of the trustees' fiduciary duties.

> *Spinner,* 417 Mass. at 556–557, 631 N.E.2d at 546–547.

**12.** The defendants appear to have misread the allegations of the verified complaint as they seem mistakenly to believe that the alleged conflict was between Ms. Tamposi and her children as beneficiaries. *See* # 51 at 18 ("Count IV, yet another version of legal malpractice, is based on an 'irreconcilable' conflict of interest between [Ms. Tamposi] and other EMT Trust beneficiaries, and cannot be sustained.").

to be a basis for civil liability." (*citing Wong v. Ekberg*, 148 N.H. 369, 375, 807 A.2d 1266, 1271 (2002)).); *Kalled v. Albee*, 142 N.H. 747, 750, 712 A.2d 616, 617 (1998) ("[T]he [R]ules [of Professional Conduct] are not designed to provide a private cause of action."). In the absence of any legal support for the assertion that the existence of a conflict of interest serves as an independent and separate cause of action, the motion to dismiss Count IV shall be allowed.

*v. Count IX—Unjust Enrichment* [13]

■ In Count IX, Ms. Tamposi alleges that Attorney Denby and Burke Warren have been unjustly enriched "as a result of their negligence and misrepresentations." (# 1 ¶ 83) As delineated by the New Hampshire Supreme Court:

> Unjust enrichment is an equitable remedy, found where an individual receives 'a benefit which would be *unconscionable* for him to retain.' *Kowalski v. Cedars of Portsmouth Condo. Assoc.*, 146 N.H. 130, 133, 769 A.2d 344 (2001) (emphasis added; quotation omitted). However, '[w]hile it is said that a defendant is liable if "equity and good conscience" requires, this does not mean that a moral duty meets the demands of equity.' [*American*] *University v. Forbes*, 88 N.H. 17, 19, 183 A. 860 (1936). Unjust enrichment is not a boundless doctrine, but is, instead, 'narrower, more predictable, and more objectively determined than the implications of the words "unjust enrichment".' *Restatement (Third) of Restitution and Unjust Enrichment* § 1 comment b at 2 (Discussion Draft, 2000).

*Clapp v. Goffstown School Dist.*, 159 N.H. 206, 210, 977 A.2d 1021, 1024–1025 (2009).

The "benefit" in this instance would be the substantial amount of money received as attorneys' fees over the course of the representation, allegedly exceeding $2,000,000. (# 1 ¶ 30)

The New Hampshire Supreme Court has explained that "[r]estitution and quantum meruit recovery based upon 'unjust enrichment are allowed by the courts as alternative remedies to an action for damages for breach of contract.' 26 R. Lord, *Williston on Contracts* § 68:1, at 5 (4th ed.2003); *see Kondrat v. Freedom School Board*, 138 N.H. 683, 686, 650 A.2d 316 (1994)." *General Insulation Co. v. Eckman Const.*, 159 N.H. 601, 611, 992 A.2d 613, 620 (2010).

■ Further,

> One general limitation is that unjust enrichment shall not supplant the terms of an agreement. *See* 42 C.J.S. *Implied Contracts* § 38 (2007) ('[U]njust enrichment ... is not a means for shifting the risk one has assumed under contract.'). It is a well-established principle that the court ordinarily cannot allow recovery under a theory of unjust enrichment where there is a valid, express contract covering the subject matter at hand. *See J.G.M.C.J. v. Sears, Roebuck & Company*, 391 F.3d 364, 369 (1st Cir. 2004) (applying New Hampshire law and rejecting claim of unjust enrichment where defendant 'acted in full compliance with a valid, express contract' (citations omitted)); *Pella Windows and Doors v. Faraci*, 133 N.H. 585, 586, 580 A.2d 732 (1990) (holding that liability for unjust enrichment may accrue, '[w]here, as in the present case, no express contractual relationship exists between the parties'); *Restatement of Restitution*

---

**13.** Again, this claim is being designated Count IX as it is in the verified complaint, but in fact it should be Count X.

§ 107(1) (1937) ('A person of full capacity ... pursuant to a contract with another ... is not entitled to compensation therefor other than in accordance with the terms of such bargain, unless the transaction is rescinded ... or unless the other has failed to perform his part of the bargain.'); *Restatement (Third) of Restitution and Unjust Enrichment* § 2 comment c at 16 (Discussion Draft, 2000) ('Where a benefit is conferred within the framework of a valid and enforceable contract, the recipient's liability to make compensation is fixed exclusively by the contract.'). Unjust enrichment may be available to contracting parties where the contract was breached, rescinded, or otherwise made invalid, or where the benefit received was outside the scope of the contract. *See Restatement of Restitution* § 107(1); *Restatement (Third) of Restitution and Unjust Enrichment* § 2 comment c at 16.

*Clapp*, 159 N.H. at 210–211, 977 A.2d at 1025; *see also Axenics, Inc. v. Turner Const. Co.*, 164 N.H. 659, 669, 62 A.3d 754, 764 (2013) ("It is a well-established principle that the court cannot allow recovery under a theory of unjust enrichment when there is a valid, express contract covering the subject matter at hand.").

▮ In the verified complaint, the plaintiff specifically alleges that there was a express, written contract outlining the details of the legal relationship between the parties. (# 1 ¶ 23 and Exh. A [14]) Admittedly, the legal representation had disastrous consequences, but the representation did in fact occur, and no positive results were guaranteed. In other words, while Ms. Tamposi claims that the legal services

and advice that she received from Attorney Denby and Burke Warren were subpar, she nonetheless received the legal services contemplated under the contract; she alleges no claim for breach of contract in the verified complaint. In these circumstances, the alternative contractual remedy of unjust enrichment has no place.[15] The motion to dismiss Count IX shall be allowed.

### V. Conclusion

For all of the reasons stated, it is ORDERED that the Motion To Dismiss Count I Through IV and IX of Plaintiff's Verified Complaint of Defendants Stephanie Denby, Esq., and Burke Warren McKay & Serritella, P.C. (# 50) be, and the same hereby is, ALLOWED with respect to Counts II, IV and IX and otherwise, DENIED.

---

**14.** The defendants note in their brief that Ms. Tamposi "alleges no basis upon which she could claim that she is entitled to reimbursement fees. [Ms. Tamposi] does not allege that she actually paid those fees (which she did not)." (# 51 at 20)

**15.** The case upon which Ms. Tamposi relies, *R. Zoppo Co., Inc. v. City of Manchester*, 122 N.H. 1109, 453 A.2d 1311 (1982), does not hold otherwise.